CLERK'S OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**ABINGDON DIVISION**

JUN 15 2010

JOHN F. CORCORAN, CLERK
BY: _____
DEPUTY CLERK

ROBERT ADAIR, and on behalf of himself and
all others similarly situated,

                Plaintiff,

    v.

EQT CORPORATION and EQT PRODUCTION
COMPANY

                Defendants.

Case No. _1:10CV37_

**CLASS ACTION COMPLAINT**

**Trial By Jury Requested**

       Plaintiff, Robert Adair, on behalf of himself and all others similarly situated, states as

follows for his Complaint against Defendants, EQT Corporation and EQT Production Company:

### INTRODUCTION

       1.     This case is brought on behalf of landowners in Buchanan, Dickenson, Lee,

Russell, Scott and Wise Counties, Virginia ("the Class") who have sold, conveyed, or leased

their coal rights to Defendants or third parties, and from whose lands Defendants have produced

and sold substantial quantities of coalbed methane gas ("CBM") – a valuable energy source –

although the members of the Class neither conveyed their CBM nor leased their CBM production

rights to Defendants.  For years, Defendants have produced CBM from the Class Members'

lands based on Defendants' (false) assertion that Defendants' coal ownership or leasehold rights

Defendants obtained from coal owners, provided Defendants with the right to produce and sell

the CBM, thereby taking undue and/or unlawful advantage of certain provisions of the Virginia

Gas and Oil Act, VA. CODE ANN. § 45.1-361-1, *et seq.* ("the 1990 Gas Act"), that permit the

production of CBM in the face of "conflicting claims" of CBM ownership.  Asserting that there

were conflicting CBM ownership claims, Defendants instituted proceedings before the Virginia

Gas and Oil Board that resulted in the entry of orders which pooled all interests or estates in

CBM drilling units, appointed Defendants as operator of the CBM units, and provided that the

Class Members were "deemed" to have leased their CBM interests in the units to Defendants.

The members of the Class were thereby subjected to an involuntary "lease" of their valuable

CBM rights to Defendants at a royalty rate ("1/8th net proceeds") that is a below-market rate and

constitutionally deficient.  Such "royalties" were not even paid, however, to the Class Members

but were instead deposited into an escrow account and are being held by the Virginia Gas and

Oil Board pending judicial resolution of the "conflicting claims" of CBM ownership.  In the

meantime, 7/8ths of the CBM sales proceeds attributable to the Class Members' interests have

been retained by Defendants for their own use and benefit, with no accounting or payment for

same having been made to the Class Members.

      2.    Defendants deprived the Class Members of their CBM and/or production

revenues attributable to their CBM interests, by claiming that Defendants own the CBM through

Defendants' coal ownership or by claiming that Defendants have the right to produce the CBM

as a result of leasehold rights (purportedly) obtained by Defendants from third party coal owners.

Defendants' claims of CBM ownership and/or production rights are unfounded and contrary to

the law.  The Virginia Supreme Court held six years ago that CBM "is a distinct mineral estate"

from coal, and that landowners retain the rights to CBM located on their property when they

convey or lease coal rights.  *Harrison-Wyatt, LLC v. Ratliff*, 593 S.E.2d 234, 238, 267 Va. 549,

556 (2004).  A new state law codifies the *Harrison-Wyatt* rule.  VA. CODE ANN. § 45.1-361.21:1:

"A conveyance, reservation, or exception of coal shall not be deemed to include coalbed methane

880925.1

gas." Therefore, controlling statutory and common law in Virginia holds that the Class Members own the rights to the CBM on their land, and that Defendants do not own or hold those rights.

3.     The "deemed leases" imposed on the Class Members were conditionally imposed, in that those "leases" are, in accordance with VA. CODE ANN. § 45.1-361.22(6), "subject to a final legal determination of ownership." Plaintiff requests this Court make such a determination in this proceeding as to the interests of Plaintiff and the Class Members.

4.     On behalf of the Class, Plaintiff seeks a judgment to establish – among other things – that:

(a)     Class Members – not Defendants – have the right to produce the CBM in, upon and underlying their respective lands, and the right to produce CBM was not conveyed, leased, or transferred with coal rights;

(b)     For any CBM hereafter produced by Defendants from the Class Members' lands, Defendants must account to the Class Members as unleased mineral owners on an eight-eighths (8/8ths) basis;

(c)     All "deemed lease" royalties attributable to the Class Members' CBM interests must be released from escrow to the Class Members;

(d)     Defendants must account for the methodology they used to calculate the escrowed royalties, must prove that they sold the CBM at market prices and otherwise calculated the royalties properly, and must pay Class Members damages for any escrow payments that were for less than true market value or were otherwise calculated improperly;

(e)     The provision of § 45.1-361.22(4) of the 1990 Gas Act that sets one-eighth (1/8th) as the royalty rate for deemed leases and/or the provisions of the pooling orders issued by the Virginia Gas and Oil Board mandating a "1/8th net proceeds" royalty rate for deemed leases, are an unconstitutional taking in violation of the Fifth and Fourteenth Amendments to the United States Constitution, and in violation of Article I, Section 11 of the Virginia Constitution; and

(f)     In light of the unconstitutionality of the 1/8th net proceeds
deemed lease royalty rate, Defendants must – in addition to
causing the escrowed 1/8th royalties to be released to the
Class Members – disgorge and pay over to the Class
Members an amount of money equal to seven-eighths
(7/8ths) of the value of all the CBM attributable to the
Class Members' interests that has been produced and sold
by Defendants in the past.

## PARTIES

5.      Plaintiff, Robert Adair, is an adult resident citizen of Tazewell County, Virginia.

Plaintiff owns land and gas, including coalbed methane, in Dickenson County, Virginia.

6.      Defendant EQT Corporation (formerly known as Equitable Resources, Inc.) is a

foreign company organized under the laws of the State of Pennsylvania and has its principal

office at 625 Liberty Avenue, Pittsburgh, Pennsylvania 15222.

7.      Defendant EQT Production Company (formerly known as Equitable Production

Company) is a subsidiary of EQT Corporation.  EQT Production Company is a foreign company

organized under the laws of the State of Pennsylvania and has its principal office at 1710

Pennsylvania Avenue, Charleston, West Virginia 25302.

## JURISDICTION

8.      Plaintiff, individually and on behalf of the Class, seeks the issuance of a

declaratory judgment pursuant to 28 U.S.C. § 2201(a) and the recovery of damages and/or

injunctive relief as a result of the matters described hereinafter.

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§1332(d) because the aggregate amount in controversy exceeds $5,000,000 exclusive of interest

and costs, and because one or more members of the Class are citizens of a State different from

the Defendants.

10.     This Court has personal jurisdiction over Defendants because Defendants conduct business in the Commonwealth of Virginia, including, *inter alia*, producing gas in the Commonwealth of Virginia, and entering into agreements for the sale of property and property rights located in the Commonwealth of Virginia.

11.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(a)(2) because a substantial part of the acts and transactions complained of herein occurred in this District, and pursuant to 28 U.S.C. §1391(a)(3) because Defendants are subject to personal jurisdiction at the time this action is commenced.

## DEFINITIONS

12.     The following definitions apply to this Complaint:

a.     The term "including" means "including, without limitation."

b.     The term "Landowner" means each person and entity, public or private, who owns land ("Land") that is located in any of the Subject Virginia Counties and is, in whole or in part, included in a coalbed methane gas unit/well operated by EQT Corporation or EQT Production Company, according to the land records in the Subject Virginia Counties and/or Defendants' records and files.

c.     "Subject Virginia Counties" means Buchanan, Dickenson, Lee, Russell, Scott and Wise Counties, Virginia, and all other Virginia Counties in which EQT Corporation or EQT Production Company operates (or has operated) CBM well/units.

## FACTUAL ALLEGATIONS

13.     This case concerns the ownership of coalbed methane gas located in the Subject Virginia Counties and produced from wells currently operated by EQT Corporation or EQT Production Company.  EQT Corporation and EQT Production Company will sometimes hereinafter be referred to collectively as "EQT."

880925.1

14.     Various companies hold the right to extract coal through coal mining operations in the Subject Virginia Counties ("Coal Companies").  The Coal Companies mine and produce coal – or hold the right to mine and produce coal – based upon their ownership of the coal and/or their leasehold rights to the coal.  In some instances, the landowner conveyed their coal to a Coal Company pursuant to a severance deed or similar instrument, whereby the landowner conveyed the ownership of all coal in, upon, and underlying their lands.  In other circumstances, the landowner retained ownership of the coal estate, but entered into a coal lease with a Coal Company pursuant to which the Coal Company was granted the right to produce the coal, as lessee, and to pay royalties thereon to the lessor/landowner.

15.     CBM is a natural gas that resides in coal seams.  Coal Companies have historically ventilated or otherwise removed CBM from their coal mines as a safety measure, and discharged the CBM into the atmosphere.  However, during the 1970's it became apparent that CBM could be a valuable energy source; and in 1990, the Virginia General Assembly enacted the Virginia Gas and Oil Act, VA. CODE ANN. §§ 45.1 - 361.1, *et seq.* (the "1990 Gas Act"), whereby CBM wells could be drilled and operated and CBM could thereby be produced and sold for residential, commercial or industrial use rather than merely discharged into the atmosphere.

16.     In the 1990's, EQT began producing and selling CBM from coal reserves in the Subject Virginia Counties.  EQT's CBM operations are extensive.  At the close of 2009, EQT operated more than 1,000 CBM wells in the Subject Virginia Counties, resulting in the production of millions of Mcf of CBM which was marketed and sold by EQT in 2009.

17.     EQT's production and sale of CBM is premised upon, *inter alia*, EQT's assertions that (a) EQT's coal ownership includes the ownership of all CBM associated with the coal, and/or (b) EQT has entered into gas leases with Coal Companies which purported to provide

EQT with the right to produce and sell the CBM that is associated with the Coal Companies' coal. Contrary to Defendants' assertions, Plaintiff and the Class Members own and possess the right to produce all CBM located in, upon and underlying their respective lands.

18.     When a landowner (such as Plaintiff and the Class Members) conveys the ownership of coal in, upon and underlying his/her land to a third party, title to the CBM in, upon and underlying his/her land does not pass to the third party along with the coal, and the coal owner has no right or authority to produce the CBM. Similarly, when a landowner enters into a coal lease authorizing a third party (lessee) to produce/extract the landowner's coal, such lease does not carry with it the right to produce and sell CBM, and the coal lessee has no right or authority to produce the CBM. Instead, the landowner retains ownership of the CBM that is located in, upon and underlying his/her land, and the landowner has the right to produce and sell the CBM (or lease such production rights to a third party and receive royalties thereon).

19.     Plaintiff and the Class Members, as the true CBM owners, have the exclusive right to produce CBM from their respective lands, including the right to capture, reduce to possession, and sell the CBM that is within any coal strata on or under their lands; and they have never conveyed nor transferred such rights to Defendants. Defendants have, nevertheless, undertaken operations whereby they have captured, reduced to possession, and sold CBM which Plaintiff and the Class Members have the right to capture, reduce to possession, and sell. Defendants have never properly accounted to Plaintiff and the Class Members for same and have never made full and proper payments to Plaintiff and the Class Members for CBM that has been produced and sold by Defendants and is attributable to Plaintiff's and the Class Members' respective interests, as owners (unleased owners) of the gas estate. EQT's actions constitute a

- 7 -

880925.1

trespass upon Plaintiff's and the Class Members' lands and the conversion of Plaintiff's and

Class Members' CBM and/or monies derived from the production and sale of their CBM.

20.     Through the 1990 Gas Act, Virginia established the Virginia Gas and Oil Board

and statutory procedures for the production of CBM by an operator in those instances where

there are conflicting claims of ownership of the CBM.  EQT has drilled and operated CBM

wells/units based on the false premise that EQT's coal ownership or leasehold rights EQT

obtained from Coal Companies, provided EQT with the right to produce and sell the CBM.

Asserting that there were "conflicting claims" to the ownership of the CBM, EQT has instituted

proceedings before the Virginia Gas and Oil Board that resulted in the entry of orders which

pooled all interests or estates in CBM drilling units, appointed EQT as operator of the CBM

units, and provided that Plaintiff and the Class Members (the true owners of the CBM) were

"deemed" to have leased their CBM interests in the units to EQT.  Plaintiffs and the Class

Members were thereby subjected to an involuntary "lease" of their CBM rights to EQT which

provided for "royalties" on a "1/8th net proceeds" basis, with net proceeds being comprised of

actual proceeds received by EQT from the sale of the CBM less costs incurred downstream of

the wellhead, including, but not limited to, gathering, compression, treating, transportation and

marketing costs.  Such "royalties" were not paid, however, to Plaintiffs and the Class Members

but were instead deposited into an escrow account and are being held by the Virginia Gas and

Oil Board pending judicial resolution of the "conflicting claims" of CBM ownership.

21.     The "deemed leases" imposed on Plaintiff and Class Members were conditionally

imposed, in that those "leases" are, in accordance with VA. CODE ANN. § 45.1-361.22(6),

"subject to a final legal determination of ownership."  The Virginia Gas and Oil Board does not

(and EQT and the Board have both asserted that the Board does not) have the authority to make

"a final legal determination of ownership." Plaintiff requests this Court make such a determination in this proceeding as to the interests of Plaintiff and the Class Members.

22. In *Harrison-Wyatt, LLC v. Ratliff*, 593 S.E.2d 234 (Va. 2004), the Virginia Supreme Court held that where a landowner, or his predecessor-in-title, has conveyed all the coal in and under his land, that title to the CBM remained with the landowner and did not pass to the coal owner along with the coal. In addition, VA. CODE ANN. § 45.1-361.21:1 (enacted in April 2010) provides that: "A conveyance, reservation, or exception of coal shall not be deemed to include coalbed methane gas." Based on, *inter alia*, the *Ratliff* case and/or VA. CODE ANN. § 45.1 - 361.21:1, Plaintiff requests that this Court enter a judgment declaring that Plaintiff and the Class Members hold the ownership and production rights to CBM located in, upon and underlying their respective lands, and confirming that EQT does not hold such ownership or production rights.

23. Upon the issuance of such a declaratory judgment by this Court: (a) there will have been a "final legal determination of ownership" of the CBM located in, upon and underlying Plaintiff's and Class Members' respective lands; (b) Plaintiff and the Class Members will no longer be "deemed" to have leased their CBM interests to EQT; and (c) Plaintiff and the Class Members will be entitled, on a prospective basis, to receive from EQT all of the CBM that is produced by EQT and is attributable to Plaintiff's and Class Members' unleased CBM interests and/or to receive from EQT, on a monthly basis, all of the proceeds that are realized by EQT from its sales of Plaintiff's and the Class Members' CBM. In other words, instead of making "deemed lease" royalty payments into escrow on a 1/8th net proceeds basis, EQT will be obligated to pay monthly revenues to Plaintiff and the Class Members on an eight-eighths

(8/8ths) basis (net of a proportionate share of actual, direct and reasonable well operation expenses).

24.     Upon the issuance of such a declaratory judgment by this Court, Plaintiffs and the Class Members would also be entitled to receive all "deemed lease" royalty payments that have been deposited by EQT into escrow; and the Court should direct EQT to instruct and otherwise authorize the Virginia Gas and Oil Board to release such "deemed lease" royalty payments from escrow, plus all interest accrued thereon, and pay such monies over to Plaintiff and the Class Members.

25.     All of EQT's "deemed lease" royalty payments into escrow have been calculated on a "1/8th net proceeds" basis pursuant to VA. CODE ANN. §45.1 – 361.22(4) (providing for payment of 1/8th of proceeds into escrow) and/or pooling orders issued by the Virginia Gas and Oil Board (providing for a "1/8th net proceeds" royalty rate).  EQT's CBM wells are extremely low-risk (no-risk) operations, given that the wells are drilled at relatively shallow depths into coal seams that are known to contain substantial quantities of commercially recoverable CBM. In such circumstances, a 1/8th net proceeds royalty is materially and substantially less than the royalty that could be obtained through the negotiation of a gas lease in a free, open, and competitive market.  Accordingly, the "deemed leases" imposing a 1/8th net proceeds royalty constitute a taking of Plaintiff's and Class Members' property rights without just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution and in violation of Article I, Section 11 of the Virginia Constitution; and the "deemed leases" and the 1/8 net proceeds royalty provision contained therein are void *ab initio*. Therefore, in addition to receiving from escrow all 1/8ths net proceeds royalty payments on EQT's past production, Plaintiff and the Class Members are entitled to separately receive from EQT an amount of money

equal to seven-eighths (7/8ths) of the value of all the CBM attributable to Plaintiff's and the Class Members' interests that has been produced and sold by EQT in the past. EQT requested that the Virginia Gas and Oil Board implement the constitutionally deficient "deemed lease" royalty rate ("1/8th net proceeds"), and EQT thereby engaged in willful, wanton, outrageous, bad faith, anti-competitive, and otherwise improper conduct. EQT should, therefore, be required to make such 7/8ths payments on a gross basis, without any deductions for a proportionate share of drilling, completion, or operating costs.

26. The full extent of EQT's acts and omissions in regard to its payment (or non-payment) of monies owed to Plaintiff and the Class Members on CBM produced by EQT and the damages that may have been suffered by Plaintiff and the Class Members as a result thereof, are not currently known, and can only be determined adequately through an accounting and investigation of EQT's books, records, and practices, including, without limitation, disclosure of detailed information relating to the handling and marketing of gas produced by EQT and all other matters relating to EQT's calculation and payment (or nonpayment) of "deemed lease" royalty payments into escrow. For example, Plaintiff alleges, upon information and belief, that there are certain instances where EQT has wholly failed and refused to deposit any "deemed lease" royalties into escrow and has, instead, retained all (8/8ths) of the proceeds that are attributable to the interests of the true CBM owners (e.g., Plaintiff and the Class Members). In addition, Plaintiff alleges, upon information and belief, that there are certain instances where the "deemed lease" royalties paid by EQT into escrow were calculated improperly and were insufficient. For example, in marketing the CBM it produced, EQT was obligated to act as a reasonably prudent operator and had the duty to market and sell the CBM at the highest price obtainable. However, in calculating and making its "deemed lease" royalty payments into

escrow, EQT has, upon information and belief, improperly used gas prices that were less than fair market value prices, including prices resulting from the sale of gas by EQT to affiliates on a non-arm's length basis.  Plaintiff and the Class Members demand and are entitled to receive a full and accurate disclosure and an accounting for all such matters from which the full extent of EQT's wrongful acts and omissions and Plaintiff's and the Class Members' resulting damages may be revealed.  Plaintiff and the Class Members are entitled to recover from EQT all amounts that are shown to be owed by EQT as the result of such accounting, including prejudgment interest thereon at the maximum lawful rate.

27.     Plaintiff requests that the Court consider the appointment of a master under Rule 53, FED. R. CIV. P., to assist the Court in the resolution of the ownership and accounting issues due to be resolved through this action, with all such costs for same, including the master's compensation, to be paid by EQT.

## CLASS ACTION ALLEGATIONS

28.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself and the Class, defined as follows:

> Each Landowner who has conveyed (or whose predecessor-in-title conveyed) the ownership of the coal in and under his/her Land to a third party under a severance deed or other instrument that conveys coal only, and not the Landowner's gas estate/rights; and each Landowner who has entered (or whose predecessor-in-title entered) a coal lease which authorizes a third party to produce and sell the coal in and under his/her Land but which does not lease the Landowner's gas estate/rights to the third party.  The Class excludes (a) the Defendants, and (b) any person who serves as a judge in this civil action and his/her spouse.

29.     Plaintiff reserves the right to redefine the Class and/or establish subclasses as may be appropriate.

30.     The members of the Class are so numerous that joinder of all members is impractical.  Disposition of the claims in this action will provide substantial benefits to both the

- 12 -

parties and the Court.

31.     Although the precise number and identity of the Class Members can be ascertained from the books and records of Defendants, Plaintiff alleges, upon information and belief, that the Class exceeds 100 members.

32.     There are questions of law and/or fact common to the Class that predominate over any questions affecting individual Class Members.  These questions include, but are not limited to, the following:

a.     Whether Plaintiff and the Class Members own the right to produce coalbed methane gas in and under their respective land;

b.     Whether a conveyance of the ownership of coal and/or a lease of coal production rights do not, as a matter of law, include coalbed methane gas;

c.     Whether Defendants have committed trespass upon Plaintiff's and the Class Members' Lands and converted Plaintiff's and the Class Members' coalbed methane gas and/or production revenues attributable thereto;

d.     Whether Defendants have failed to account and/or properly account to Plaintiff and the Class Members for coalbed methane gas which Plaintiff and Class Members have the right to produce;

e.     Whether Defendants should prospectively account to Plaintiff and the Class Members as unleased mineral owners and pay to them 8/8ths of all monies received by Defendants from the sale of coalbed methane gas attributable to the interests of Plaintiff and the Class Members;

f.     Whether Defendants' accounting methodology for production of coalbed methane gas from the Subject Virginia Counties, including their calculation of working interest

and royalty interest payments attributable thereto and Defendants' payment, underpayment and/or non-payment of royalties into escrow, was the same for all Class Members;

g.    Whether Defendants used the same methodology and underlying records to calculate all Class Members' escrow account royalties;

h.    Whether Defendants used for all Class Members the same gas prices (per MCF and/or per MMBtu) to calculate their escrow account royalty payments on coalbed methane gas produced by Defendants, and the transactions upon which those gas prices were based;

i.    Whether the gas prices used by Defendants to make royalty payments into escrow and attributable to Plaintiff's and the Class Members' interests were less than the fair market value prices for such coalbed methane gas;

j.    Whether the "1/8th net proceeds" royalty rate imposed on Plaintiff and the Class Members is unconstitutional;

k.    Whether Defendants have violated their duty to properly account to Plaintiff and the Class Members on coalbed methane gas produced in the Subject Virginia Counties as a result of the acts and omissions described herein;

l.    Whether punitive damages can and should be imposed on Defendants by virtue of Defendants' wrongful acts and omissions.

33.    The common pattern of conduct by Defendants (along with the common theories for redressing the misconduct) support the maintenance of this action as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

34.    A well-defined community of interest and common questions of law and fact affect the parties represented and to be represented by this class action.

880925.1

35.     The claims of Plaintiff are typical of the claims of the Class, and Plaintiff has the same interests as the other members of the Class.

36.     Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

37.     Plaintiff is committed to prosecuting this action and has retained experienced and competent counsel.  Plaintiff's counsel are experienced in class actions, including actions involving breaches of oil and gas leases and underpayments of gas royalties.  Neither Plaintiff nor Plaintiff's counsel have any interests that might cause them not to vigorously pursue this action.

38.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Absent a class action, many members of the Class will find the litigation costs regarding their claims so prohibitive that they effectively would be unable to seek any redress at law.  Because of the size of the individual Class Members' claims, many could not afford to seek legal redress or the relief requested for the wrongs set forth herein.  Absent a class action, Defendants  will continue the improper and wrongful conduct herein described, the Class Members will continue to be damaged by Defendants' wrongful conduct, and Defendants' violations of the law will continue without remedy.

## COUNT I

## DECLARATORY JUDGMENT

39.     Plaintiff restates and incorporates herein by reference all of the allegations contained in the above numbered paragraphs.

40.     Plaintiff requests that the Court issue a judgment pursuant to 28 U.S.C. §2201, and declare that:

(a)     Class Members – not Defendants – have the right to

produce the CBM in, upon and underlying their respective lands, and the right to produce CBM was not conveyed, leased, or transferred with coal rights;

(b)    For any CBM hereafter produced by Defendants from the Class Members' lands, Defendants must account to the Class Members as unleased mineral owners on an eight-eighths (8/8ths) basis;

(c)    All "deemed lease" royalties attributable to the Class Members' CBM interests must be released from escrow to the Class Members;

(d)    Defendants must account for the methodology they used to calculate the escrowed royalties, and must prove that they sold the CBM at market prices, and otherwise calculated the royalties properly;

(e)    The provision of § 45.1-361.22(4) of the 1990 Gas Act that sets one-eighth (1/8th) as the royalty rate for deemed leases and/or the provisions of the pooling orders issued by the Virginia Gas and Oil Board mandating a "1/8th net proceeds" royalty rate for deemed leases, are an unconstitutional taking in violation of the Fifth and Fourteenth Amendments to the United States Constitution, and in violation of Article I, Section 11 of the Virginia Constitution; and

(f)    In light of the unconstitutionality of the 1/8th net proceeds deemed lease royalty rate, Defendants must – in addition to causing the escrowed 1/8th royalties to be released to the Class Members – disgorge and pay over to Class Members an amount of money equal to seven-eighths (7/8ths) of the value of all the CBM attributable to the Class Members' interests that has been produced and sold by Defendants in the past.

41.    Secondarily, Plaintiff and the Class Members also request that they recover their actual damages from Defendants, statutory or other interest at the maximum lawful rate, and any and all other relief deemed appropriate by the Court.

## COUNT II

### TRESPASS AND CONVERSION

42.     Plaintiff restates and incorporates herein by reference all of the allegations contained in the above-numbered paragraphs.

43.     The above-described conduct constitutes an unlawful trespass upon Plaintiffs and the Class Members' lands and an unlawful conversion of Plaintiff's and the Class Members' CBM and/or monies derived from the production and sale of their CBM.

44.     Plaintiff and the Class Members have been damaged as a result thereof and are entitled to recover their actual damages from Defendants, statutory or other interest at the maximum lawful rate, and any and all other relief deemed appropriate by the Court.

## COUNT III

### BREACH OF IMPLIED DUTIES

45.     Plaintiff restates and incorporates herein by reference all of the allegations contained in the above-numbered paragraphs.

46.     Defendants owed Plaintiff and the Class Members certain obligations resulting from implied covenants and duties imposed on a well operator as a matter of law, including the duty to market, the duty to act as a reasonably prudent operator, and the duties of good faith and fair dealing.

47.     The above-described conduct constitutes violations and breaches of the implied duties which Defendants owe to Plaintiff and the Class Members.

48.     Plaintiff and the Class Members have been damaged as a result thereof and are entitled to recover their actual damages from Defendants, statutory or other interest at the maximum lawful rate, and any and all other relief deemed appropriate by the Court.

880925.1

## COUNT IV

### <u>BREACH OF FIDUCIARY DUTIES</u>

49.     Plaintiff restates and incorporates herein by reference all of the allegations contained in the above-numbered paragraphs.

50.     By virtue of the fiduciary duties and responsibilities of the operator of any gas unit/well who undertakes and assumes the duty of handling the sales and accounting functions of the parties, Defendants had an affirmative duty to calculate and pay to Plaintiff and the Class Members the true and correct amount of monies due Plaintiff and the Class Members, had an affirmative duty to account for all of the CBM produced and sold by Defendants, and had an affirmative duty to fully and accurately report and disclose all material information relating to Defendants' calculation of their payments.

51.     The above-described conduct constitutes intentional violations and breaches of the fiduciary duties and responsibilities owed by Defendants to Plaintiff and the Class Members.

52.     Plaintiff and the Class Members have been damaged as a result thereof and are entitled to recover their actual damages from Defendants, statutory or other interest at the maximum lawful rate, and any and all other relief deemed appropriate by the Court.

## COUNT V

### <u>PUNITIVE DAMAGES</u>

53.     Plaintiff restates and incorporates herein by reference all of the allegations contained in the above numbered paragraphs.

54.     The actions of Defendants as set forth hereinabove were willful and wanton and in utter disregard of the rights of Plaintiff and the Class Members, or were done with reckless disregard for their rights, thus entitling Plaintiff and the Class Members to punitive damages in an amount to be determined by the jury.

880925.1

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully demands as follows on behalf of himself and the Class:

1.      That a class be certified by the Court as soon as practicable, and that this action proceed as a class action with Plaintiff serving as Class Representative for the Class and with counsel for Plaintiff serving as Class Counsel;

2.      That the Court enter a judgment declaring the respective rights and obligations of the parties as described and requested above;

3.      That the Court award injunctive relief requiring Defendants to properly account to Plaintiff and the Class Members as described and requested above;

4.      That Plaintiff and the members of the Class recover full compensatory damages against Defendants, and that Defendants disgorge and pay over to Plaintiff and the members of the Class all of Defendants' ill-gotten gains as described and requested above;

5.      That Plaintiff and the members of the Class recover punitive damages against Defendants as determined by a jury;

6.      Pre-judgment and post-judgment interest on all amounts awarded hereunder;

7.      Reasonable attorneys' fees and costs of this action;

8.      All additional relief as may be just and proper and to which the Plaintiff and the members of the Class may be entitled; and

9.      Trial by jury.

880925.1

Respectfully submitted,

Dated:  June ⁄⁄ 2010

ROBERT ADAIR

By::  _____
          Peter G. Glubiak, Esq. (VSB 31271)

GLUBIAK LAW OFFICE
11165 West River Road
P.O. Box 144
Aylett, VA  23009
Telephone:  (804) 769-1616
Facsimile:  (804) 769-1897
Email: *glubiaklaw@aol.com*

Larry D. Moffett (*pro hac vice* to be filed)
DANIEL COKER HORTON & BELL, P.A.
265 North Lamar Blvd., Suite R
P.O. Box 1396
Oxford, MS  38655
Telephone:  (662) 232-8979
Facsimile:  (662) 232-8940
Email: *lmoffett@danielcoker.com*

Don Barrett (*pro hac vice* to be filed)
Brian Herrington (*pro hac vice* to be filed)
DON BARRETT, P.A.
404 Court Square North
P.O. Drawer 987
Lexington, MS  39095
Telephone:  (662) 834-2376
Facsimile:  (662) 834-2628
Email:  *dbarrett@barrettlawoffice.com*

David S. Stellings (*pro hac vice* to be filed)
Jennifer Gross (*pro hac vice* to be filed)
LIEFF, CABRASER, HEIMANN
   & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592
Email: *dstellings@lchb.com*

Charles F. Barrett (*pro hac vice* to be filed)
BARRETT & ASSOCIATES, P.A.
6518 Hwy. 100, Suite 210
Nashville, TN 37205
Telephone:  (615) 515-3393
Facsimile:  (615) 515-3395
Email:  *cb@barrettandassociates.net*

880925.1