# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | | |
|---|---|---|
| ROBERT ADAIR, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:10-cv-00037 |
| EQT PRODUCTION COMPANY, ARLIE J. LAMBERT & ANN P. LAMBERT, RAYMOND LOFTIN & LINDA LAMBERT LOFTIN, G. WORTH PEGRAM, JR. & BERNICE LAMBERT PEGRAM, ARTHUR AMOS & ABBIE LAMBERT AMOS, JERRY SHORT & ROSE LAMBERT SHORT, HARRIS McGIRT & JOAN LAMBERT McGIRT, GREG LAMBERT, C. W. DOTSON & MARY FRANCES L. DOTSON, OCIE G. SUTHERLAND, DENNIS SUTHERLAND & CHARLOTTE SUTHERLAND, DON RAINEY & LINDA CAROL RAINEY, LAMBERT LAND LLC, and JOHN DOES A-Z, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................... 1

II.  FACTUAL BACKGROUND AND CLASS DEFINITION ................................ 2

III.  STANDARD ................................................................................ 7

IV.  ARGUMENT ............................................................................... 9

    A.  Plaintiff Satisfies Rule 23(a)'s Requirements. .......................................... 9

        1.  The Class Is Sufficiently Numerous. ............................................. 9

        2.  There Are Questions Of Law And Fact Common To All Class Members. .......................................................................... 10

        3.  Plaintiff's Claims Are Typical of Those of All Class Members. ................................................................................. 12

        4.  Plaintiff Satisfies the Adequacy of Representation Requirement. ................................................................. 13

    B.  Plaintiff Satisfies Rule 23(b)(2)'s Requirements. ................................... 13

    C.  Plaintiff Satisfies Rule 23(b)(3)'s Requirements. .................................. 16

        1.  Common Questions Predominate. ............................................... 16

        2.  A Class Action Is the Superior Method For Adjudicating These Claims. ....................................................................... 19

    D.  Class Counsel Satisfy Rule 23(g)'s Requirements. ................................ 22

V.  CONCLUSION ........................................................................... 22

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997).................................................................... 8, 13, 16, 19

*Baby Neal for and by Kanter v. Casey*,
  43 F.3d 48 (3d Cir. 1994) ............................................................. 14

*Brown v. Cameron-Brown Co.*,
  92 F.R.D. 32 (D. Va. 1981)........................................................... 22

*Brown v. Nucor Corp.*,
  576 F.3d 149 (4th Cir. 2009) ........................................................ 9, 10

*Central Wesleyan Coll. v. W.R. Grace & Co.*,
  6 F.3d 177 (4th Cir. 1993) ............................................................ 8, 22

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974)....................................................................... 8

*Gunnells v. Healthplan Svcs., Inc.*,
  348 F.3d 417 (4th Cir. 2003) ........................................................ passim

*Harrison-Wyatt, LLC v. Ratliff*,
  593 S.E.2d 234, 267 Va. 549 (2004)............................................ 5, 15

*Hirschfeld v. Stone*,
  193 F.R.D. 175 (S.D.N.Y. 2000) .................................................. 13

*In re Catawba Indian Tribe*,
  973 F.2d 1133 (4th Cir. 1992) ...................................................... 9

*Kohl v. Assoc. of Trial Lawyers of Am.*,
  183 F.R.D. 475 (D. Md. 1998)...................................................... 15

*Lilly v. Harris-Teeter Supermarket*,
  720 F.2d 326 (4th Cir. 1983) ........................................................ 8

*McLarin v. Prestage Foods, Inc.*,
  No. 7:09-cv-100, 2010 WL 4693662 (E.D.N.C. Nov. 10, 2010) ......... 19

*Miller v. Baltimore Gas & Elec. Co.*,
  202 F.R.D. 195 (D. Md. 2001)...................................................... 7

*Mitchell-Tracy v. United Gen. Title Ins. Co.*,
  237 F.R.D. 551 (D. Md. 2006)...................................................... 10

*Olvera-Morales v. Int'l Labor Mgmt. Corp.*,
  246 F.R.D. 250 (M.D.N.C. 2007) ................................................ 9, 14

*Phillips Petroleum v. Shutts*,
  472 U.S. 797 (1985) ...................................................................... 20

*Robinson v. Metro-North Commuter R.R. Co.*,
  267 F.3d 147 (2d Cir. 2001).......................................................... 14

## TABLE OF AUTHORITIES
### (continued)

Page

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
--- U.S. ----, 130 S. Ct. 1431, 176 L.Ed.2d 311 (2010)......................................................... 7

*Steinberg v. Nationwide Mut. Ins. Co.*,
224 F.R.D. 67 (E.D.N.Y. 2004) ................................................................ 17

*Stillmock v. Weis Markets, Inc.*,
385 Fed. Appx. 267 (4th Cir. Jul. 1, 2010) ............................. 8, 16, 17

*Tatum v. R.J. Reynolds Co.*,
254 F.R.D. 59 (M.D.N.C. 2008) ...................................................... 10, 12

*Weiss v. York Hosp.*,
745 F.2d 786 (3d Cir. 1984)................................................................ 15

### STATUTES

Va. Code § 45.1-361-1, *et seq.*................................................................ 1, 3, 4, 5

### RULES

Fed. R. Civ. P. 23 ........................................................................ 8, 15, 17

Fed. R. Civ. P. 23(a) .......................................................................... 9, 13

Fed. R. Civ. P. 23(a)(1) ........................................................................... 9

Fed. R. Civ. P. 23(a)(2) ...................................................................... 9, 10

Fed. R. Civ. P. 23(a)(3) ...................................................................... 9, 12

Fed. R. Civ. P. 23(a)(4) ......................................................................... 13

Fed. R. Civ. P. 23(b) .............................................................................. 13

Fed. R. Civ. P. 23(b)(3)(A) .................................................................... 19

Fed. R. Civ. P. 23(b)(3)(B) .................................................................... 20

Fed. R. Civ. P. 23(b)(3)(C) .................................................................... 21

Fed. R. Civ. P. 23(b)(3)(D) .................................................................... 22

Fed. R. Civ. P. 23(c)(1)(C) ...................................................................... 5

Fed. R. Civ. P. 23(c)(2) .......................................................................... 22

Fed. R. Civ. P. 23(c)(4) .......................................................................... 17

Fed. R. Civ. P. 23(g) .............................................................................. 22

## I.      __INTRODUCTION__

For years, as a result of the actions of EQT Production Company ("EQT"), owners of gas interests in Dickenson, Lee, Russell, Scott, and Wise Counties, Virginia ("Class members") have been wrongfully denied production revenues from the sale of coalbed methane ("CBM") attributable to their interests.  EQT has taken unlawful advantage of certain provisions of the Virginia Gas and Oil Act, Va. Code § 45.1-361-1, *et seq.* ("the Act") that allow for the production and sale of CBM in the face of "conflicting claims" of ownership of the CBM. Contrary to settled and binding authority from the Virginia Supreme Court and subsequent codifying legislation, EQT has claimed that the Class members' interests in their CBM were in conflict with the interests of coal owners.  As a result of proceedings that EQT brought before the Virginia Gas and Oil Board ("the Board"), Plaintiff and the Class were "deemed, subject to a final legal determination of ownership," to have leased their CBM interests to EQT in the production units where EQT operates.  The Act requires production revenues to be placed into escrow pending the determination of ownership.  In this case, Plaintiff and the Class seek the "final legal determination of ownership" that the Act requires and that, under settled law, will be in their favor.  This determination will allow the years' worth of revenues that have been (or should have been) placed into escrow to be released to Plaintiff and the Class members, and for Plaintiff and Class members to receive proceeds on future production.

This ownership determination, which is the first and primary goal of this lawsuit, involves a single legal issue that applies to all Class members.  As such, this case is perfectly suited for class treatment under, at a minimum, Rule 23(b)(2), which provides for certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respect the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Unlike class certification under Rule 23(b)(3),

certification under Rule 23(b)(2) does not require that questions of law or fact common to all Class members predominate over issues that may be individual to certain Class members (although common issues do predominate here).  Instead, Rule 23(b)(2) requires exactly what is presented here – that EQT (and the coal owner defendants) refuse to recognize the proper ownership interests of Plaintiff and the Class members, which makes injunctive relief appropriate.

After the ownership determination is made in Plaintiff's and the Class members' favor, Plaintiff and the Class members are entitled to receive their escrowed funds.  However, Plaintiff also alleges that EQT failed to calculate properly the amounts that should have been placed into escrow, that EQT often failed to deposit into escrow any royalties whatsoever based on sales of CBM attributable to the Class members' interests, and that EQT based the royalties owed to Plaintiff and the Class members on below-market prices.  These claims, too, arise out of a set of facts common to all Class members, involve the application of a single body of law to a similarly situated group of Class members, and can be proven at trial with evidence common to all Class members.  The Court should certify these claims under Rule 23(b)(3).

EQT has not changed its escrow practices despite sustained local media attention – including a multi-part Pulitzer Prize-winning series on the problem – on EQT's refusal or inability to administer the escrow accounts properly.  This case is the only opportunity that Plaintiff and the Class members have to recover the money that has been wrongfully denied them for too long.

## II.   FACTUAL BACKGROUND AND CLASS DEFINITION

CBM is a natural gas that resides in coal seams.[1]  Previously removed and

---

[1] The facts below are taken from Plaintiff's Amended Complaint (Dkt. No. 32), filed July 27, 2010.

discharged from coal mines, during the 1970's technological advances made the commercial

production and sale of CBM feasible, and gas production companies began to drill CBM wells.

In 1990, when the Virginia General Assembly enacted the Act, there was uncertainty in Virginia

about the legal question of whether CBM was owned by the owners of the gas estate/gas interests

or by coal estate/coal interest owners (*e.g.*, coal companies).  The Act facilitated the drilling and

production of CBM without waiting for a judicial resolution of ownership conflicts between coal

and gas interest owners in a given unit.  However, to protect the interests of the true CBM

owners, the Act required the operator of the drilled well to place proceeds from the sale of CBM

attributable to "conflicting" CBM ownership interests into escrow until "a final decision of a

court of competent jurisdiction adjudicating the ownership of coalbed methane gas as between

[the conflicting claimants]." *See* VA. CODE ANN. § 45.1-361.22(4) and (5).

   EQT began producing and selling CBM in Virginia in the 1990's, and its CBM

operations are extensive.  At the close of 2009, EQT operated 1,878 CBM wells in Virginia.[2]

EQT's CBM units were established by pooling orders issued by the Board under § 45.1-361.22

of the Act.  Beginning in the 1990's, when making an application to the Board for a CBM Unit

to be established, EQT -- as the proposed operator -- undertook to (and was obligated under §

45.1-361.22 of the Act to) identify those tracts in which there were conflicting claims to the

ownership of CBM, and to provide lists or schedules that identified the conflicting claimants or

potential owners.  When it submitted its CBM unit applications and made subsequent filings as

the Board-appointed CBM unit operator, EQT consistently advised and represented to the Board

that conflicting claims to the ownership of CBM existed for each of those tracts in which one

person or entity owned the gas estate/gas interests (including Plaintiff and Class members here)

---

[2] *See* http://www.dmme.virginia.gov/DGO/Production/gasoilproductionstats.shtml.

and a different person or entity owned the coal estate/coal interests (identified in Plaintiff's Amended Complaint as "coal owner defendants"). The conflicting claim ostensibly arose from the question of whether the CBM allocable to that tract was owned by the gas owner(s) or by the coal owner(s).

EQT's actions resulted in the entry of Board orders providing that Plaintiff and the Class members (the true owners of the CBM) were "deemed" to have leased their CBM interests in the CBM Units to EQT. *See* VA. CODE ANN. § 45.1-361.22(6) ("Any person who does not make an election under the pooling order shall be deemed, subject to a final legal determination of ownership, to have leased his gas or oil interest to the coalbed methane gas operator as the pooling order may provide.")

The CBM sales proceeds attributable to "conflicting interests," including proceeds attributable to Plaintiff's and the Class members' gas interests, were (or were supposed to have been, but have not been) deposited by EQT into a Board-established escrow account per the provisions of VA. CODE ANN. § 45.1-361.22. To release the escrowed monies, § 45.1-361.22(5) of the Act provides that "[t]he Board shall order payment of principal and accrued interest, less escrow account fees, from the escrow account to conflicting claimants only after (i) a final decision of a court of competent jurisdiction adjudicating the ownership of coalbed methane gas as between them or (ii) an agreement among all claimants owning conflicting estates in the tract in question or any undivided interest therein." The CBM production proceeds attributable to Plaintiff's and the Class members' gas interests that are -- according to EQT -- in conflict with Defendants' coal interests, have never been released from escrow or otherwise paid over to Plaintiff and the Class members.

Through this action, Plaintiff requests, on behalf of himself and the Class, that the

Court enter a judgment declaring, as between the "conflicting claimants" identified by EQT, that as a matter of law the CBM allocated to the subject CBM Unit tracts is owned by Plaintiff and the Class members (the gas owners) and is not owned by the coal/coal estate owners.  Such a determination is and has been a straightforward legal issue since the Virginia Supreme Court issued its binding decision in *Harrison-Wyatt, LLC v. Ratliff*, 593 S.E.2d 234, 238, 267 Va. 549, 556 (2004) addressing the issue of conflicting ownership of CBM at the heart of this case.  In *Harrison-Wyatt*, the Court held that coalbed methane gas "is a distinct mineral estate" from coal and that gas owners retain the rights to CBM when they convey or lease coal rights.  The Virginia legislature codified this decision with the recent addition of § 45.1-361.21:1 to the Act, which provides that: "A conveyance, reservation, or exception of coal shall not be deemed to include coalbed methane gas."

       In his Amended Complaint, Plaintiff seeks for himself and the Class members a judgment from the Court that directs EQT to instruct and otherwise authorize the Board to release all escrowed proceeds, including accrued interest, to Plaintiff and the Class members.[3] Plaintiff also alleges that EQT failed to properly calculate and pay into escrow the full payments required under the deemed leases, and sometimes failed to deposit any royalties whatsoever payable  under the deemed leases.  Similarly, Plaintiff alleges that the "deemed lease" royalties paid by EQT for Plaintiff and other Class members into escrow were calculated improperly,

---

[3] Plaintiff also alleged that he and Class members are entitled, under the terms of the Act, to 8/8ths net proceeds following the ownership determination in his favor and that construing the Act to provide that EQT must deposit only 1/8ths net proceeds into escrow amounts to an unconstitutional taking of private property for private purposes.  Magistrate Judge Sargent recommended that this claim be dismissed, and Plaintiff timely objected to this recommendation. Plaintiff respectfully reserves the right to amend his motion if the Court overrules this aspect of the Report.  Rule 23(c)(1)(C) expressly contemplates such a revision of the class certification decision.  *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment.").

based on gas prices that were less than the highest price obtainable,  including prices from the sale of gas by EQT to affiliates on a non-arm's-length basis.  Beginning in December 2009, a series of articles in the *Bristol Herald Courier* in 2009 meticulously detailed EQT's and other companies' failures to pay royalties into escrow, resulting in a Pulitzer Prize for that newspaper. To this day, a Virginia CBM owner who has been deemed leased as a result of a purportedly conflicting ownership claim still cannot easily determine whether the revenues attributable to the sale of CBM matches the payments a company such as EQT is making into escrow.  (*See* Exh. B to the accompanying Declaration of David S. Stellings.)

In addition to the claim for a declaratory judgment for ownership of the CBM, Plaintiff alleged claims for trespass, conversion, two separate claims for negligence, breach of fiduciary duties, and unjust enrichment, and requested, among other things, a full accounting of EQT's management of the escrow account.  On January 21, 2011, the Court issued a Report and Recommendations (Dkt. No. 177), which allowed Plaintiff's declaratory judgment claim for an ownership determination to proceed, along with his claims for trespass, conversion, one form of negligence, and unjust enrichment.  Now, pursuant to the Court's scheduling orders of January 21, 2011 (Dkt. No. 178) and February 16, 2011 (Dkt. No. 186), Plaintiff seeks to certify the following class:

> Each person and entity who has been identified by EQT Production Company or its predecessor(s)-in-interest as an "unleased" owner of the gas estate or gas interests in a tract included in a coalbed methane gas unit operated by EQT Production Company in any of the Subject Virginia counties, and whose ownership of the coalbed methane gas attributable to that tract has been further identified by EQT Production Company as being in conflict with a person(s) or entity(ies) owning the coal estate or coal interests in the tract or coalbed methane interests allegedly derived from coal estate or coal interests in the tract, according to filings made by EQT Production Company with the Virginia Gas and Oil Board and/or according to orders entered by the Virginia Gas and Oil Board

pursuant to EQT Production Company's filings.  The Class excludes (a) the Defendants, and (b) any person who serves as a judge in this civil action and his/her spouse.  Excluded from the Class claims are all purportedly conflicting claims pertaining to those tracts/parcels that are comprised of railroads or public roads.

## III.   <u>STANDARD</u>

Rule 23 of the Federal Rules of Civil Procedure "states that '[a] class action may be maintained' if two conditions are met: The suit must satisfy the criteria set forth in subdivision (a) (i.e., numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b)."  *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, --- U.S. ----, 130 S. Ct. 1431, 1437, 176 L.Ed.2d 311 (2010) (quoting Fed. R. Civ. P. 23).  In this case, Plaintiff seeks certification under both Rule 23(b)(2) and Rule 23(b)(3) as to the claim for a declaration of ownership, and under Rule 23(b)(3) as to all other claims.[4]  Rule 23(b)(2) requires a showing that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Rule 23(b)(3) requires that "questions of law or fact common to Class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

As the Fourth Circuit has held, the class action device "serves important public purposes.  In addition to promoting judicial economy and efficiency, class actions also afford aggrieved persons a remedy if it is not economically feasible to obtain relief through the traditional framework of multiple individual damage actions."  *Gunnells v. Healthplan Svcs.,*

---

[4] "Rule 23(b)'s categories "are not mutually exclusive, and a class may be certified under more than one category."  *Miller v. Baltimore Gas & Elec. Co.*, 202 F.R.D. 195, 199 (D. Md. 2001) (quoting *Eubanks v. Billington*, 110 F.3d 87, 91 (D.C. Cir. 1997)).

*Inc.*, 348 F.3d 417, 424 (4th Cir. 2003) (internal quotation omitted).  The United States Supreme Court has held that the class action mechanism is designed to "overcome the problem that small recoveries do not provide the incentive for an individual to bring a solo action prosecuting his or her rights.  A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 616 (1997) (quotation omitted).

According to the Fourth Circuit, "federal courts should 'give Rule 23 a liberal rather than a restrictive construction, adopting a standard of flexibility in application which will in the particular case 'best serve the ends of justice for the affected parties and ... promote judicial efficiency.'" *Id.* (quoting *In re A.H. Robins*, 880 F.2d 709, 740 (4th Cir. 1989)). "Certification is only concerned with the commonality (not the apparent merit) of the claims and the existence of a sufficiently numerous group of persons who may assert those claims." *Lilly v. Harris-Teeter Supermarket*, 720 F.2d 326, 332-33 (4th Cir. 1983) (quoted in *Brown v. Nucor Corp.*, 576 F.3d 149, 153 (4th Cir. 2009) (reversing denial of class certification)).[5] *See also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (court should not be concerned with merits of the action or who will prevail at trial in deciding class certification).[6]

District courts have "wide discretion in deciding whether or not to certify a

---

[5] While in some cases courts have called for more extensive merits-related presentation beyond the pleadings to assist the court on whether common issues can be adjudicated via a class-wide trial, *see, e.g., Stillmock v. Weis Markets, Inc.*, 385 Fed. Appx. 267, 269 (4th Cir. Jul. 1, 2010), in this case the Court has the benefit not only of detailed pleadings, but briefs and rulings on motions to dismiss and other matters to provide the necessary context, and, so recognizing, the Court has expedited the class certification process.

[6] Consistent with the Court-ordered schedule in this case, there has been no discovery taken to date.  Therefore, the Court can and should decide this motion based on the allegations in Plaintiff's Amended Complaint.  If EQT seeks to introduce new facts in its opposition to this motion, and the Court permits EQT to do so, Plaintiff respectfully requests the right to take appropriate discovery to address such submissions before he files his reply brief.

proposed class," and their decisions "may be reversed only for abuse of discretion."  *Central Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177, 185 (4th Cir. 1993) (quoting *In re A.H. Robins Co., Inc.*, 880 F.2d 709, 728-29 (4th Cir. 1989)).  The class certification decision is "committed to the "broad discretion" of the district court.  *In re Catawba Indian Tribe*, 973 F.2d 1133, 1136 (4th Cir. 1992).

## IV.   ARGUMENT

### A.   Plaintiff Satisfies Rule 23(a)'s Requirements.

In moving for class certification, a plaintiff must first meet the four requirements of Rule 23(a).  First, the class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Second, there must be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Third, "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Fourth, "the representative parties [must] fairly and adequately protect the interests of the class."  The Fourth Circuit has stated that the commonality, typicality, and adequacy requirements "tend to merge, with commonality and typicality serving as guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the Class members will be fairly and adequately represented in their absence."  *Brown v. Nucor Corp.*, 576 F.3d 149, 152 (4th Cir. 2009) (internal quotations and ellipsis omitted).

### 1.   The Class Is Sufficiently Numerous.

Plaintiff satisfies Rule 23(a)(1)'s requirement that the proposed class be so numerous that the joinder of all Class members is impracticable.  *See* Fed. R. Civ. P. 23(a)(1).  "Impracticable, however, does not mean impossible.  A party seeking certification need show only that it is extremely difficult or inconvenient to join all the members of a class."  *Olvera-*

*Morales v. Int'l Labor Mgmt. Corp.*, 246 F.R.D. 250, 255 (M.D.N.C. 2007) (internal citations and quotations omitted).  Courts have generally "found classes of as few as forty members sufficiently large to make joinder impracticable."  *Mitchell-Tracy v. United Gen. Title Ins. Co.*, 237 F.R.D. 551, 556 (D. Md. 2006).  The exact number of Class members need not be known for certification to be proper.  *Id.*  Plaintiff alleges that the proposed Class contains more than 100 members (Am. Compl. ¶ 98), and public records indicate that as of 2009, EQT was operating 1,878 CBM wells in Virginia.[7]  EQT itself has acknowledged that this case involves "hundreds of tracts of land" (Dkt. No. 78, at 12), and each tract could include numerous Class members.  In addition, a spokesman for the Virginia Department of Mines, Minerals and Energy recently stated that there are more than 800 accounts in escrow, with each representing even hundreds of people owed royalties.  (*See* Exh. B.)  Plaintiff easily satisfies the numerosity requirement.

### 2.  There Are Questions Of Law And Fact Common To All Class Members.

Rule 23(a)(2) requires a showing of commonality – that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The threshold requirements for commonality "are not high."  *Brown*, 576 F.3d at 153 (reversing denial of class certification) (quoting *Shipes v. Trinity Indus.*, 987 F.2d 311, 316 (5th Cir. 1993)).  Rule 23(a)(2) "does not require that all, or even most issues be common."  *Tatum v. R.J. Reynolds Co.*, 254 F.R.D. 59, 64 (M.D.N.C. 2008) (quotation and citation omitted).  Indeed, a single common issue of law or fact is sufficient to satisfy the commonality requirement.  *See Mitchell-Tracy*, 237 F.R.D. at 557 (citing *Holsey v. Armour & Co.*, 743 F.2d 199, 216-17 (4th Cir. 1984)).

Plaintiff identified several common issues of law and fact in his Amended Complaint.  Those and additional common issues of law and fact include:

---

[7] *See* http://www.dmme.virginia.gov/DGO/Production/gasoilproductionstats.shtml.

a.    Whether as a matter of law Plaintiff and the Class members own the CBM that is attributable to the CBM Unit tracts in which they own gas estates/gas interests;

b.    Whether as a matter of law a conveyance, reservation, or exception of coal does not include CBM;

c.    Whether Defendants have committed an actionable trespass upon Plaintiff's and the Class members' lands and/or gas interests;

d.    Whether as a matter of law the coal owners defendants do not own the CBM that is attributable to the CBM unit tracts in which they own coal estate/coal interests only;

e.    Whether EQT has converted Plaintiff's and the Class members' CBM and/or revenues attributable thereto;

f.    Whether EQT has failed to account and/or properly account to Plaintiff and the Class members for CBM and/or revenues attributable thereto;

g.    Whether EQT's accounting methodology for the production of CBM from the Subject Virginia Counties, including its calculation of production proceeds attributable thereto and EQT's payment, underpayment and/or non-payment of proceeds into escrow, was the same for all Class members;

h.    Whether EQT used the same methodology and underlying records to calculate all Class members' escrow account payments;

i.    Whether EQT used for all Class members the same gas prices (per MCF and/or per MMBtu) to calculate their escrow account payments on CBM produced by EQT, and the transactions upon which those gas prices were based;

j.      Whether the gas prices used by EQT to make royalty payments attributable to Plaintiff's and the Class members' interests into escrow were less than the best gas prices obtainable for such CBM;

k.      Whether EQT has violated its duty to properly account to Plaintiff and the Class members on CBM produced in the Subject Virginia Counties as a result of the acts and omissions described herein; and

l.      Whether punitive damages can and should be imposed on EQT by virtue of EQT's wrongful acts and omissions.

(*See* Am. Compl. ¶ 99.)

In denying most of EQT's motion to dismiss, the Court affirmed the common and classwide nature of the questions of fact and law arising from Plaintiff's claims. For example, the Court's interpretation of the Act is necessarily applicable to all Class members who have been deemed leased under the provision of the Act. There is no question that Plaintiff meets the standard for showing commonality.[8]

### 3.      Plaintiff's Claims Are Typical of Those of All Class Members.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The typicality requirement is met where the claims asserted by the named plaintiffs arise from the same course of conduct and are based on the same legal theories as the claims of the unnamed Class members." *Tatum*, 254 F.R.D. at 65 (internal quotation and citation omitted). Plaintiff meets this requirement because he is the owner of gas interests, including CBM, in tracts included in

---

[8] The Magistrate Judge also stated that the coal owners whose interests purportedly conflict with those of the gas owner Class members will need to be named as defendants before judgment is entered (*see* Report at 52), but even the question of how those names will be discovered, because it depends on the nature of EQT's records, is a common one, and does not present issues specific to any given Class member. (*See* Report at 54.)

CBM units operated by EQT in Virginia and has been identified by EQT as having claims to the CBM that conflict with the owners of coal estates and/or interests in the tracts.  (Am. Compl. ¶ 1.)  He has been "deemed, subject to a final legal determination of ownership," to have leased his interests in the subject CBM.  He, like, all other Class members subject to such "deemed leases," has an interest in seeing the monies that have been placed in escrow released to him, and in ensuring that such monies have, as they should have been, placed in escrow, and that they have been properly calculated.  His claims are typical of those of all Class members.

### 4.      Plaintiff Satisfies the Adequacy of Representation Requirement.

Rule 23(a)'s fourth and final requirement is that a class representative must be able to "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This requires that the proposed representative not have interests antagonistic to those of the class.  *See Amchem Prods.*, 521 U.S. at 625.  A conflict must be substantial for a proposed representative to be found to be inadequate; it "must be fundamental.  It must go to the heart of the litigation." *Gunnells*, 348 F.3d at 430-31 (quoting 6 Alba Conte & Herbert Newberg, Newberg on Class Actions § 18.14 (4th ed. 2002)).  *See also Hirschfeld v. Stone*, 193 F.R.D. 175, 183 (S.D.N.Y. 2000) ("[O]nly a conflict that goes to the very subject matter of the litigation will defeat the party's claim of representative status.") (quoting Wright, Miller & Kane, *Federal Practice & Procedure* § 1768, at 326-27) (alteration in original).  Further, the conflict "must be more than merely speculative or hypothetical."  *Gunnells*, 348 F.3d at 430.  There are no such conflicts with respect to Plaintiff here.

### B.      Plaintiff Satisfies Rule 23(b)(2)'s Requirements.

Class certification requires that Plaintiff show that the requirements of Rule 23(a) are met, and one of the three subsections of Rule 23(b).  Plaintiff seeks certification of the declaratory judgment claim (which seeks an ownership determination) under Rule 23(b)(2) and

Rule 23(b)(3).  As stated above, certification of this claim under Rule 23(b)(2) does **not** require a showing of predominance of common questions of law or fact over individualized ones, but instead requires that Plaintiff show that EQT "has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."  Fed. R. Civ. P. 23(b)(2); Am. Compl. ¶ 100.  Plaintiff can make this showing.

Certification under Rule 23(b)(2) is appropriate in cases where "a claim for injunctive or declaratory relief also includes a claim for monetary damages if the requested damages are incidental to the requested injunctive or declaratory relief."  *Olvera-Morales*, 246 F.R.D. at 258 (citations and internal quotation omitted); *see also Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 58-59 (3d Cir. 1994) (holding that Rule 23(b)(2)'s requirement "is almost automatically satisfied in actions primarily seeking injunctive relief.").  Damages are incidental if they "flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief."  *Id.*  (quoting *Lemon v. Int'l Union of Operating Engineers*, 216 F.3d 577, 581 (7th Cir. 2000)).  As another court has put it, entitlement to incidental damages "does not vary based on the subjective considerations of each class member's claim, but flows directly from a finding of a liability on the claims for class-wide injunctive and declaratory relief."  *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 165 (2d Cir. 2001) (internal quotation omitted).

Certification under Rule 23(b)(2) fits like a glove here.  Plaintiff states clearly and repeatedly in his Amended Complaint that "Plaintiff's primary goal in this case is to obtain from this Court the 'final legal determination of ownership' that the [Act] requires, which – under the plain language of the Act – would nullify Plaintiff's and Class members' deemed leases."  (Am.

Compl. ¶ 9.)  This ownership determination – a form of purely declaratory relief – is the "critical remedy that Plaintiff seeks… The monetary relief that Plaintiff seeks is secondary to, and flows from, the declaratory/injunctive request."  (Am. Compl. ¶ 101.)  Plaintiff's right to recover on EQT's mishandling of the escrow account and miscalculations of the amounts that it should have been depositing into it flow from the initial ownership determination, which is purely declaratory in nature.

Certification is appropriate here because EQT continues to take the position – even in moving to dismiss Plaintiff's complaint – that the *Harrison-Wyatt* decision is not binding on it and that "ownership issues continue" (albeit only because EQT refuses to abide by the Virginia Supreme Court's ruling).  (Dkt. No. 105 (EQT Reply Supp. Mot. Dismiss), at 20.) EQT, along with the coal owner defendants (who have joined in EQT's arguments),[9] has chosen an interpretation of the Act and of *Harrison-Wyatt* that affects all deemed lessors in the same way.

There could not be a clearer example of a defendant "act[ing] or refus[ing] to act on grounds that apply generally to the class."  Fed. R. Civ. P. 23(b)(2).  In fact, the Advisory Committee envisioned just this type of case when it stated that Rule 23(b)(2) certification as appropriate where "settling the legality of the behavior with respect to a class as a whole is appropriate."  Fed. R. Civ. P. 23 advisory committee note (1966 amendments).  As another court put it, certification under Rule 23(b)(2) is appropriate "[w]hen a suit seeks to define the relationship between the defendant(s) and the world at large."  *Weiss v. York Hosp.*, 745 F.2d 786, 811 (3d Cir. 1984).  EQT's conduct is applicable to the class as a whole, making this case

---

[9] These coal owner defendants also have acted and refused to act in a manner common to all Class members, taking the position that there are ownership conflicts in the subject CBM, and/or refusing to take any action to rectify the situation by disavowing any ownership in the CBM and allowing Plaintiff's and the Class members' monies to be released from escrow.

perfectly suited for class certification under Rule 23(b)(2).  *Kohl v. Assoc. of Trial Lawyers of Am.*, 183 F.R.D. 475, 486 (D. Md. 1998) ("Since Defendants have acted in a consistent manner toward the putative Class members, and Plaintiff is seeking injunctive relief …, the prerequisite of Rule 23(b)(2) has been satisfied.").  The Court should certify the declaratory relief claim under Rule 23(b)(2).

**C.      Plaintiff Satisfies Rule 23(b)(3)'s Requirements.**

In addition to certification of the ownership claim under Rule 23(b)(2), Plaintiff seeks certification of all claims under Rule 23(b)(3).  When a plaintiff moves for certification under this subsection, a court must determine whether "questions of law or fact common to Class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Plaintiff meets these requirements.

**1.      Common Questions Predominate.**

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 615.  The Fourth Circuit recently approvingly quoted the Eleventh Circuit's statement of the predominance inquiry:  "Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief."  *Stillmock*, 385 Fed. Appx. at 274 (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004)) (internal quotation marks and alteration marks omitted). "*Critically, Rule 23(b)(3)'s commonality-predominance test is qualitative rather than quantitative.*"  *Stillmock*, 385 Fed. Appx. at 274 (citing *Gunnells*, 348 F.3d at 429) (emphasis added).  The Court need not find that class certification is appropriate as to each and every of Plaintiff's claims to grant class certification.  The Fourth Circuit has held that courts are to

examine predominance as to each cause of action, "not to the entire lawsuit." *Gunnells*, 348 F.3d at 441-42 (citing cases).[10]

Common issues of fact and law also predominate here because proof common to all Class members will be available to prove the elements of each of Plaintiff's claims.[11] *See Stillmock*, 385 Fed. Appx. at 274. In addition to meeting the requirements of Rule 23(b)(2), Plaintiff's claim for a declaration of ownership more than involves a predominance of common issues; it raises no individual issues. Its resolution involves the application of a single state's statutes and binding precedent from the state's highest court to Class members who are similarly situated *as a result* of the statutory provisions Plaintiff is asking be applied.

Similarly, questions common to all Class members predominate over individual ones in Plaintiff's tort claims. As Magistrate Judge Sargent stated in her Report and Recommendations, Plaintiff's "tort claims all depend on allegations that EQT is not paying royalties into escrow as required by the relevant pooling orders." (Report at 41.) There are no individualized issues at all arising out of Plaintiff's claims for underpayments; they all depend, as the Magistrate Judge noted, on EQT's conduct, affecting all Class members in the same way. For example, as to both the trespass and conversion claims, the Court held that Plaintiff alleged "that EQT has not fully accounted for the full production of these wells and has not deposited

---

[10] Additionally, as the Fourth Circuit has made clear, courts should take "full advantage" of the provisions of Rule 23 "permitting class treatment of separate issues in the case." *Gunnells*, 348 F.3d at 441 (quoting *In re A.H. Robins Co., Inc.*, 880 F.2d 709, 740 (4th Cir. 1989)). Thus, even if the Court were not convinced that common issues predominated as to the case as a whole, certification would still be appropriate as to claims in which common issues predominated. *See id.* Class treatment of specific issues within a case is specifically provided for in Federal Rule of Civil Procedure 23(c)(4).

[11] In addition, it is undisputed that the Court need only look to and apply one body of law – Virginia law. *See* Report at 12-13. This fact also weighs in favor of a finding that common issues of law predominate. *Compare, e.g., Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 78 (E.D.N.Y. 2004) (certifying class notwithstanding variances in states' contract laws). There are no such variances here.

sufficient sums into escrow to adequately compensate the CBM owners for their interests."
(Report at 43 (trespass) and 44 (conversion).)  As correctly formulated by the Court, the
resolution of these claims depends entirely on proof of EQT's conduct, which affects and
affected all Class members.

   The same is true of Plaintiff's negligence claim.  In recommending that EQT's
motion to dismiss this claim be denied, Magistrate Judge Sargent noted her holding in the related
*Healy* case that "Virginia courts would recognize an implied duty on the part of oil and gas
lessees to operate diligently and prudently, including a duty to market [the gas]."  Report at 46
(citing *Healy v. Chesapeake Appalachia, LLC, et al.*, 2011 WL 24261, at *14-16 (W.D. Va. Jan.
5, 2011)).  The nature of these implied duties, and how and whether EQT has carried out these
duties, are key questions that are common to all Class members.

   Finally, the Magistrate Judge also showed why common questions predominate
over individual ones with respect to Plaintiff's claim for breach of fiduciary duty.  (*See* Report at
46-48 (allowing claim to proceed).)  The Magistrate Judge pointed out that the "deemed lessors
have not chosen the operator, nor have they voluntarily entered into any production agreement."
(*Id.* at 47.)  In light of this, and particularly in combination with a unit operator's implied duties,
the Magistrate Judge found that "Virginia courts would impose a fiduciary duty upon forced-
pooled unit operators to properly account for and pay into escrow the royalties owed under these
imposed deemed leases."  (*Id.* at 47-48.)  As with the implied duties implicated in the negligence
claim, EQT's fiduciary relationship is the same with all Class members, and the question of
whether EQT has breached its duties through its conduct in (mis)handling the escrow accounts is
common to all Class members and can be resolved on a classwide basis.

   In sum, common issues of law and fact predominate over each of Plaintiff's

claims, satisfying the first requirement of Rule 23(b)(3).

### 2.  A Class Action Is the Superior Method For Adjudicating These Claims.

Rule 23(b)(3) requires that the court find "that a class action is superior to other available methods for fairly and effectively adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). A class action is the superior – indeed, the only – method of resolving these claims. In assessing this factor, courts "compare the possible alternatives to a class action and determine if any is superior to the proposed class action." *McLarin v. Prestage Foods, Inc.*, No. 7:09-cv-100, 2010 WL 4693662 (E.D.N.C. Nov. 10, 2010). Federal Rule of Civil Procedure 23(b)(3)(A)-(D) sets forth four factors that this Court should consider in determining whether a class action is superior to individual lawsuits for the resolution of the claims at issue. Analysis of these four factors confirms the superiority of the class device in resolving these claims.

Pursuant to Rule 23(b)(3)(A), this Court should consider the interests of the Class members in individually controlling the prosecution of separate actions. This is the classic case in which individual Class members do not have the financial incentive or ability to challenge EQT's conduct individually. As such, this case fulfills what the Supreme Court has recognized as the class device's promise of providing similarly situated plaintiffs with relatively small claims an opportunity to obtain redress. *See, e.g., Amchem Prods.*, 521 U.S. at 617.

The individual Class members here are not in a position to take on the expense and burden of prosecuting their claims against a powerful corporation such as EQT; as a practical matter, the Class members simply will not have their claims heard without a class action. There is no better evidence of the vulnerable position of Class members than the persistence over *years* and the extent of the problem of underpayments into escrow payments documented by the *Bristol Herald Courier* and alleged in this Amended Complaint. Class

members have not been in a position to force EQT to behave properly under the Act.

The United States Supreme Court has recognized the prevailing judicial view that class actions are the superior mechanism to provide access to a level playing field when a multitude of property owners are pitted against a powerful energy company and its conduct in honoring standard gas contracts is at issue. In *Phillips Petroleum v. Shutts*, 472 U.S. 797 (1985), which involved gas lease royalty payments and a breach of contract claim for overdue royalty payments, the Court noted that:

> the class action was an invention of equity to enable it to proceed to a decree in suits where the number of those interested in the litigation was to great to permit joinder. The absent parties would be bound by the decree so long as the named parties adequately represented the absent class and the prosecution of the litigation was within the common interest. Modern class actions follow the same goals, permitting litigation of a suit involving common questions when there are too many plaintiffs for proper joinder. Class actions may also permit the plaintiffs to pool claims which would be uneconomical to litigate individually.

472 U.S. At 808-809 (footnote and citation omitted). Litigation has grown only more expensive since *Shutts*, and litigants face more formidable barriers here that the class action was designed to overcome. A class action is the superior form of adjudication of this dispute.

Rule 23(b)(3)(B) addresses the extent and nature of any litigation already brought by Class members that are related to the claims brought by Plaintiff here. Class certification would be a far superior means of adjudication for individual CBM owners seeking ownership determinations. A class action is unquestionably able "to reduce litigation costs through the 'consolidation of recurring common issues.'" *Gunnells*, 348 F.3d at 426 (quoting *Central Wesleyan*, 6 F.3d at 185). Class treatment would avoid the "enormous redundancy of effort, including duplicative discovery, testimony by the same witnesses in potentially hundreds of

actions, and relitigation of many similar, and even identical, legal issues." *Id*.[12]  Individual trials

are particularly wasteful here, as the case that the similarly situated defendant in *Hale v. CNX*

*Gas Co. LLC*, 1:10-cv-00059, the companion case to this one, attached to its motion to dismiss

demonstrated.  In that case, an individual action seeking an ownership determination, the court

recognized that the underlying legal principle of CBM ownership is no longer an open question.

(*See Hale* Dkt. No. 30-1, at 5) ("[I]t is controlling Virginia law that when a landowner or her

predecessors convey only coal to an operator through a severance deed or lease, there is a legal

presumption that the landowner owns the rights to the gas under land.").)  It is wasteful and

inefficient to force Class members to relitigate a settled legal question simply because EQT

refuses to acknowledge the *stare decisis* effect of a Virginia Supreme Court decision.

Rule 23(b)(3)(C) addresses the desirability of concentrating the litigation of these

claims in this forum.  Here, the subject property is located in this district and the gas at issue was

produced in this district.  Further, all claims are governed by Virginia substantive law.  (*See*

Report, at 12-13.)  Concentrating the litigation of these claims in this Court is therefore the most

efficient way of resolving this dispute.  As the Fourth Circuit has held, a class action "provides a

single proceeding in which to determine merits of the plaintiff's claims, and therefore protects

*the defendant* from inconsistent adjudications."  *Gunnells*, 348 F.3d at 427 (emphasis in original)

(quoting 5 Moore's Federal Practice § 23.02 (1999)).  *Gunnells* also emphasized the substantial

conservation of judicial resources that class certification can provide through the "consolidation

of recurring common issues."  *Id*. at 426 (quoting *Central Wesleyan*, 6 F.3d at 185)).  These

concerns are wholly applicable here, as class certification allows a single determination of EQT's

---

[12] Further, as the Fourth Circuit pointed out in *Gunnells*, "class certification 'provides a single
proceeding in which to determine the merits of the plaintiffs' claims, and therefore protects the
defendant from inconsistent adjudications.'"  348 F.3d at 427 (citing 5 Moore's Federal Practice
§ 23.02 (1999)).

discharge of its duties.

Rule 23(b)(3)(D) requires an assessment of the manageability of this action. Manageability should be considered only in relationship to the alternative means of adjudication. *See Brown v. Cameron-Brown Co.*, 92 F.R.D. 32, 49 (D. Va. 1981). Manageability issues "are properly committed to the district court's discretion." *Central Wesleyan*, 6 F.3d at 185. There are no manageability concerns here, as liability can be determined on a classwide basis. The Class members are easily identifiable through reference to EQT's records; in fact, EQT *created* the class through its identification of Plaintiff and Class members as purportedly conflicting claimants. There are no administrative obstacles to the sending of the notice required by Rule 23(c)(2).

### D.   Class Counsel Satisfy Rule 23(g)'s Requirements.

As the accompanying declarations of counsel set forth, the Class is represented by a group of law firms with extensive experience prosecuting class actions generally, with gas royalty class actions in particular, and a deep knowledge of the area in which the Class members reside. Further, proposed Class Counsel possess the requisite knowledge of the applicable law and experience with complex litigation, and have already demonstrated that they are willing to commit the resources necessary to prosecute this case on behalf of the Class. As such, proposed Class Counsel meet the requirements of Rule 23(g) and should be appointed as Class Counsel by the Court.

## V.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court certify this case as a class action, appoint him as Class representative, and appoint the firms below as Class Counsel.

Respectfully submitted,

Dated:  February 28, 2011                      LIEFF CABRASER HEIMANN
                                                & BERNSTEIN, LLP


                                               By: */s/ David S. Stellings*

                                               David S. Stellings
                                               Steven E. Fineman
                                               Daniel E. Seltz
                                               Jennifer Gross
                                               250 Hudson Street, 8th Floor
                                               New York, NY 10013
                                               Telephone:  (212) 355-9500
                                               Facsimile:   (212) 355-9592
                                               dstellings@lchb.com
                                               sfineman@lchb.com
                                               dseltz@lchb.com
                                               jgross@lchb.com

Elizabeth Alexander                            Elizabeth J. Cabraser
LIEFF CABRASER HEIMANN                          LIEFF CABRASER HEIMANN
  & BERNSTEIN, LLP                               & BERNSTEIN, LLP
One Nashville Place                            275 Battery Street
150 Fourth Avenue North                        San Francisco, CA 94111
Suite 1650                                     Telephone:  (415) 956-1000
Nashville, TN 37219                            Facsimile:  (415) 956-1008
Telephone:  (615) 313-9000                     ecabraser@lchb.com
Facsimile: (615) 313-9965
ealexander@lchb.com


Larry D. Moffett                               Charles F. Barrett
DANIEL COKER HORTON                            6518 Highway 100, Suite 210
  & BELL, P.A.                                  Nashville TN 37205
265 North Lamar Blvd., Suite R                 Telephone: (615) 515-3393
P. O. Box 1396                                 Facsimile: (615) 515-3395
Oxford, MS 38655                               charles@cfbfirm.com
Telephone: (662) 232-8979
Facsimile:  (662) 232-8940
lmoffett@danielcoker.com

Peter G. Glubiak, VSB #31271
GLUBIAK LAW OFFICE
11165 West River Road
P.O. Box 144
Aylett, VA  23009
Telephone:  (804) 769-1616
Facsimile:   (804) 769-1897
glubiaklaw@aol.com

Don Barrett
David M. McMullan, Jr.
Brian Herrington
Katherine B. Riley
BARRETT LAW GROUP, P.A.
404 Court Square North
P.O. Drawer 927
Lexington, MS  39095
Telephone:  (662) 834-2488
Facsimile:   (662) 834-2628
dbarrett@barrettlawgroup.com
dmcmullan@barrettlawgroup.com
bherrington@barrettlawgroup.com
kbriley@barrettlawgroup.com

Richard R. Barrett
LAW OFFICES OF RICHARD R.
BARRETT, PLLC
1223 Jackson Avenue, Suite 203
Oxford, MS 38655
Telephone: (662) 307-7000
rrb@rrblawfirm.net

Jackson S. White, Jr., VSB #03677
THE WHITE LAW OFFICE
P. O. Box 286
Abingdon, VA 24212
Telephone: (276) 619-3831
Facsimile:  (866) 516-5655
jackwhite@whitelawoffice.com

<u>CERTIFICATE OF SERVICE</u>

   The undersigned counsel does hereby certify that he has this day served a true and correct copy of the above and foregoing upon all counsel of record via ECF notification and/or by e-mail

   Wade W. Massie
   Penn Stuart & Eskridge
   P. O. Box 2288
   Abingdon, VA 24212
   wmassie@pennstuart.com

   Mark E. Frye
   Penn Stuart & Eskridge
   P. O. Box 2009
   Bristol, VA 24203-2009
   mfrye@pennstuart.com

   W. Thomas McGough, Jr.
   Reed Smith, LLP
   Reed Smith Centre
   225 Fifth Avenue
   Pittsburgh, Pennsylvania 15222
   wmcgough@reedsmith.com

   Stephen R. McCullough
   Earle Duncan Getchell, Jr.
   Office of the Attorney General
   900 East Main Street
   Richmond, VA 23219
   smccullough@oag.state.va.us
   dgetchell@oag.state.va.us

   Eric R. Thiessen
   McElroy Hodges Caldwell & Thiessen
   330 Cummings Street
   P. O Box 429
   Abingdon, VA 24212
   ethiessen@mcelroyhodges.com

   This the 28th day of February, 2011.

         */s/ Daniel E. Seltz*     
         Daniel E. Seltz
         Attorney for Plaintiff