## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

ROBERT ADAIR, etc.,       )
      Plaintiff,        )
                    )  **MEMORANDUM OPINION**
v.                  )    **Case No. 1:10cv00037**
                    )
EQT PRODUCTION COMPANY, et al., )
      Defendants      )

This matter is before the court on Plaintiff's Motion For Leave To File Second Amended Complaint, (Docket Item No. 273) ("Motion").  The Motion was heard by the undersigned on February 7, 2012. Based on the arguments of the parties and the amici, and for the reasons set out below, the Motion will be granted.

### I. Facts and Procedural History

The plaintiff, Robert Adair, sues on behalf of himself and others similarly situated. Adair currently sues EQT Production Company, (formerly known as Equitable Production Company and Equitable Resources Energy Company) ("EQT"), and other known and unknown coal estate owners.[1] The Motion before the court seeks

---

[1] The Amended Complaint listed 21 known coal estate owners: Arlie J. and Ann P. Lambert, Raymond and Linda Lambert Loftin, G. Worth Pegram Jr. and Bernice Lambert Pegram, Arthur and Abbie Lambert Amos, Jerry and Rose Lambert Short, Harris and Joan Lambert McGirt, Greg Lambert, C.W. and Mary Frances L. Dotson, Ocie G. Sutherland, Dennis and Charlotte Sutherland, Don and Linda Carol Rainey and Lambert Land LLC, ("Lambert Coal Owners"). The Amended Complaint also listed unknown defendants, John Does A-Z.

to file a Second Amended Complaint, which no longer lists the coal owners as parties to the case.

The Second Amended Complaint alleges that Adair and the class members own certain gas estate interests in coalbed methane, ("CBM"), gas fields in Dickenson, Buchanan, Lee, Russell, Scott and Wise counties in Virginia, and are entitled to payments from EQT as "deemed" lessors under forced-pooling orders of the Virginia Gas and Oil Board, ("Board").  Adair is a resident of Tazewell County, and states that he is the owner of land and gas interests, including CBM, in Dickenson County.  The land Adair owns in Dickenson County is referred to as the "N. K. Rasnick tract."

In 1990, the Virginia General Assembly enacted the Virginia Gas and Oil Act, VA. CODE ANN. §§ 45.1-361.1, et seq., ("Gas Act"). When the Gas Act was enacted, there was uncertainty in Virginia as to whether CBM was owned by those who retained rights to the gas estate/interest or by those who owned the coal estate/interest in the land.  The Gas Act facilitated the drilling and production of CBM, without waiting for the CBM ownership issue to be decided, by allowing for the forced-pooling of CBM interests with conflicting claims of ownership into drilling units. *See* VA. CODE ANN. §§ 45.1-361.21, 45.1-361.22 (2002 Repl. Vol. & West Supp. 2011). In drilling units where there are conflicting claims of ownership of the CBM or where the owners of the CBM are unknown or cannot be located, the Gas Act requires the gas well operators to deposit any funds due to these interests into escrow, to be held pending identification and location of the owner or a final agreement or determination as to ownership of the CBM estate/interest. *See* VA. CODE ANN. §§ 45.1-361.21, 45.1-361.22.

Portions of the N. K. Rasnick tract are included in at least three of the Board's pooling orders. EQT previously filed certified copies of the Board's files, including the pooling orders, for each of these three wells. In Board Docket No. 98-0818-0678, EQT filed an application to place a CBM gas well, VC-3756, on a 58.77-acre drilling unit. (Docket Item No. 10, Att. 1.) As required by the Gas Act, EQT gave notice of its application and hearing before the Board to "all unleased persons owning an interest in the oil, gas and coalbed methane, in and underlying the unit." (Docket Item No. 10, Att. 2, 24-55.) This notice stated that EQT was requesting the Board issue an order pooling "all the rights, interests, and estates of the unleased persons ... in regard to the drilling, development and production of oil, gas and coalbed methane" in the proposed drilling unit. (Docket Item No. 10, Att. 2, 24.) This drilling unit is composed of six different tracts of land.

The notice for this drilling unit set out those EQT had found to have an interest in the CBM in Exhibit B. Exhibit B set out two lists of owners of the CBM for the six tracts contained in this drilling unit. One list is entitled "Gas Estate Only." The other is entitled "Coal Estate Only." The N. K. Rasnick Heirs are listed as the owners of the "Gas Estate Only" on two of the six tracts. On these tracts, the Lambert Coal Owners are listed as the owners of the "Coal Estate Only."

Exhibit B also was attached to EQT's application for this drilling unit. (Docket Item No. 10, Att. 2, 21-23.) The application stated: "Set forth in Exhibit B is the name and last-known address of each owner of record identified by [EQT] as having an interest in the oil, gas and coalbed methane underlying the unit..." (Docket Item No.

10, Att. 2, 21.) The application further stated: "[EQT] has exercised due diligence to locate each of the oil, gas and coalbed methane interest owners named herein at Exhibit B...."  (Docket Item No. 10, Att. 2, 22.)

Following a hearing, the Board, by Report Of The Board Findings and Order approved on September 24, 1998, granted the application and approved the well and the pooling of all interests in the drilling unit. The order stated in part:

> ... [T]he Board ... finds that the Applicant has (1) exercised due diligence in conducting a meaningful search of reasonably available sources to determine the identity and whereabouts of each gas and oil owner, coal owner, or mineral owner and/or potential owner, i.e., person identified by [EQT] as having ("Owner") or claiming ("Claimant") the rights to Coalbed Methane ... in the Subject Drilling Unit... and (3) that the persons set forth in Exhibit B hereto have been identified by [EQT] as persons who may be Owners or Claimants of Coalbed Methane Gas interests ... in the Subject Drilling Unit....

> ... Set forth in Exhibit B is the name and last know[n] address of each person identified by [EQT] as having or claiming an interest in the Coalbed Methane Gas in the Subject Drilling Unit .... The Gas Owners or Claimants who have not reached a voluntary agreement to share in the operation of the well represent 76.920000 percent of the gas and oil estate and 0 percent of the coal estate in Subject Drilling Unit....

(Docket Item No. 10, Att. 1, 3-4, 11.)

This Board file also contains an affidavit regarding elections, escrow and escrow accounts made by EQT's counsel James E. Kaiser. (Docket Item No. 10, Att. 1, 29-40.)  This affidavit alleged that the interests and/or claims of the N. K. Rasnick Heirs were subject to escrow "due to <u>conflicting claims</u> as between the gas owner and

the coal owner." By Supplemental Order dated December 8, 1998, the Board approved the establishment of the requested escrow account due to the conflicting claim set out in Kaiser's affidavit. (Docket Item No. 10, Att. 1, 26-27.)

Another portion of the N. K. Rasnick tract is included in the Board's pooling order in Docket No. 00-0418-0796. In this application, EQT sought to place a CBM gas well, VC-3614, on another 58.77-acre drilling unit. (Docket Item No. 10, Att. 3.) EQT also gave notice of its application and hearing before the Board to "all unleased persons owning an interest in the oil, gas and coalbed methane, in and underlying the unit." (Docket Item No. 10, Att. 4, 21-50.) This notice stated that EQT was requesting the Board issue an order pooling "all rights, interests, and estates of the unleased persons ... in regard to the drilling, development and production of oil, gas and coalbed methane" in the proposed drilling unit. (Docket Item No. 10, Att. 4, 21.) This drilling unit is composed of four different tracts of land.

The notice for this drilling unit also set out those EQT had found to have an interest in the CBM in Exhibit B. Exhibit B set out two lists of owners of the CBM for the four tracts contained in this drilling unit. One list is entitled "Gas Estate Only." The other is entitled "Coal Estate Only." The N. K. Rasnick Heirs are listed as the owners of the "Gas Estate Only" on one of the four tracts. On this tract, the Lambert Coal Owners are listed as the owners of the "Coal Estate Only." On two of the tracts, Pittston Company is listed as both the owner of the "Gas Estate Only" and "Coal Estate Only." On the remaining tract the Lambert Coal Owners are listed as both the owners of the "Gas Estate Only" and "Coal Estate Only."

Exhibit B also was attached to EQT's application for this drilling unit. (Docket Item No. 10, Att. 4, 25-27.) The application stated: "Set forth in Exhibit B is the name and last-known address of each owner of record identified by [EQT] as having an interest in the oil, gas and coalbed methane underlying the unit..."  (Docket Item No. 10, Att. 4, 25.)  The application further stated: "[EQT] has exercised due diligence to locate each of the oil, gas and coalbed methane interest owners named herein at Exhibit B...."  (Docket Item No. 10, Att. 4, 26.)

Following a hearing, the Board, by Report Of The Board Findings and Order approved on May 5, 2000, granted the application and approved the well and the pooling of all interests in the drilling unit. The order stated in part:

> ... [T]he Board ... finds that the Applicant has (1) exercised due diligence in conducting a meaningful search of reasonably available sources to determine the identity and whereabouts of each gas and oil owner, coal owner, or mineral owner and/or potential owner, i.e., person identified by [EQT] as having ("Owner") or claiming ("Claimant") the rights to Coalbed Methane ... in the Subject Drilling Unit... and (3) that the persons set forth in Exhibit B hereto have been identified by [EQT] as persons who may be Owners or Claimants of Coalbed Methane Gas interests ... in the Subject Drilling Unit....

> ... Set forth in Exhibit B is the name and last know[n] address of each person identified by [EQT] as having or claiming an interest in the Coalbed Methane Gas in the Subject Drilling Unit .... The Gas Owners or Claimants … who have not reached a voluntary agreement to share in the operation of the well represent 2.94 percent of the gas and oil estate and 0.00 percent of the coal estate in Subject Drilling Unit....

(Docket Item No. 10, Att. 3, 34-35, 42.)

This Board file also contains an affidavit regarding elections, escrow and escrow accounts made by EQT's counsel James E. Kaiser. (Docket Item No. 10, Att. 3, 19-25.) This affidavit alleged that the interests and/or claims of the N. K. Rasnick Heirs were subject to escrow. By Supplemental Order dated April 26, 2001, the Board approved the establishment of the escrow account requested in Kaiser's affidavit. (Docket Item No. 10, Att. 3, 16-18.)

Another portion of the N. K. Rasnick tract is included in the Board's pooling order in Docket No. 02-0521-1030. In this application, EQT sought to place a CBM gas well, VC-504659, on another 58.77-acre drilling unit. (Docket Item No. 10, Att. 5.) EQT also gave notice of its application and hearing before the Board to "all unleased persons owning an interest in the oil, gas and coalbed methane, in and underlying the unit." (Docket Item No. 10, Att. 5, 38-58.) This notice stated that EQT was requesting the Board issue an order pooling "all the rights, interests, and estates of the unleased persons ... in regard to the drilling, development and production of oil, gas and coalbed methane" in the proposed drilling unit. (Docket Item No. 10, Att. 5, 38.) This drilling unit is composed of 10 different tracts of land.

The notice for this drilling unit set out those EQT had found to have an interest in the CBM in Exhibit B. Exhibit B set out two lists of owners of the CBM for the 10 tracts contained in this drilling unit. One list is entitled "Gas Estate Only." The other is entitled "Coal Estate Only." The N. K. Rasnick Heirs are listed as the owners of the "Gas Estate Only" on one of the 10 tracts. On this tract, Lambert Land LLC is listed as the owner of the "Coal Estate Only." Lambert Land LLC is listed as the owner of the "Coal Estate Only" and the "Gas Estate Only" on another of the 10 tracts. Pittston

Company also is listed as the owner of the "Coal Estate Only" and the "Gas Estate Only" on another of the 10 tracts.

Exhibit B also was attached to EQT's application for this drilling unit. (Docket Item No. 10, Att. 5, 35-37.) The application stated: "Set forth in Exhibit B is the name and last-known address of each owner of record identified by [EQT] as having an interest in the oil, gas and coalbed methane underlying the unit..." (Docket Item No. 10, Att. 5, 35.) The application further stated: "[EQT] has exercised due diligence to locate each of the oil, gas and coalbed methane interest owners named herein at Exhibit B...." (Docket Item No. 10, Att. 5, 36.)

Following a hearing, the Board, by Report Of The Board Findings and Order approved on June 14, 2002, granted the application and approved the well and the pooling of all interests in the drilling unit. The order stated in part:

> ... [T]he Board ... finds that the Applicant has (1) exercised due diligence in conducting a meaningful search of reasonably available sources to determine the identity and whereabouts of each gas and oil owner, coal owner, or mineral owner and/or potential owner, i.e., person identified by [EQT] as having ("Owner") or claiming ("Claimant") the rights to Coalbed Methane ... in the Subject Drilling Unit... and (3) that the persons set forth in Exhibit B hereto have been identified by [EQT] as persons who may be Owners or Claimants of Coalbed Methane Gas interests ... in the Subject Drilling Unit....

> ... Set forth in Exhibit B is the name and last know[n] address of each person identified by [EQT] as having or claiming an interest in the Coalbed Methane Gas in the Subject Drilling Unit .... The Gas Owners or Claimants … who have not reached a voluntary agreement to share in the operation of the well represent 11.74 percent of the gas and oil estate and

0 percent of the coal estate in Subject Drilling Unit....

(Docket Item No. 10, Att. 5, 16-17, 24.)

This Board file also contains an affidavit regarding elections, escrow and escrow accounts made by EQT's counsel James E. Kaiser. (Docket Item No. 10, Att. 5, 6-9.)  This affidavit alleged that the interests and/or claims of the N. K. Rasnick Heirs were subject to escrow "due to conflicting claims as between the gas owner and the coal owner."  (Docket Item No. 10, Att. 5, 7.)  By Supplemental Order dated September 6, 2002, the Board approved the establishment of the requested escrow account due to the conflicting claims set out in Kaiser's affidavit. (Docket Item No. 10, Att. 5, 3-5.)

Plaintiff's counsel insist that the only significant difference in the current Amended Complaint and in the proposed Second Amended Complaint is contained in the request for declaratory judgment contained in Count I. In the Second Amended Complaint, Adair seeks, on behalf of himself and the class members, a judgment pursuant to 28 U.S.C. § 2201 against EQT only, declaring that:

a.   Because a conveyance, reservation, or exception of coal does not include CBM as a matter of law, no CBM ownership conflict exists as a matter of law as between (i) a person owning gas estate interests in a CBM Unit tract, and (ii) a different person owning coal estate interests and not gas estate interests in the CBM Unit tract;

b.   Because a conveyance, reservation, or exception of coal does not include CBM as a matter of law, Plaintiff and the Class Members are entitled to receive the CBM proceeds that are

attributable/allocated to those CBM Unit tracts as to which EQT has determined that Plaintiff and the Class Members are gas estate interest owners, but as to which EQT has further asserted that there are conflicting claims of CBM ownership between Plaintiff and the Class Members (as gas estate interest owners/lessors) on the one hand, and persons identified by EQT as owning coal estate interests and not gas estate interests on the other hand;

c.   All CBM proceeds in the Board's escrow account that are attributable to Plaintiff's and the Class Members' respective CBM interests and that have been deposited into the escrow account due to alleged conflicting claims of CBM ownership with persons identified by EQT as owning coal estate interests and not gas interests, must be released from the Board's escrow account and paid over to Plaintiff and the Class Members; [and]

d.   All CBM proceeds attributable to Plaintiff's and the Class Members' CBM interests that were not deposited by EQT into the Board's escrow account but have been held by EQT and not paid to Plaintiff and the Class Members due to alleged conflicting claims of CBM ownership with persons identified by EQT as owning coal estate interests and not gas interests, must be paid by EQT to Plaintiff and the Class Members....

(Docket Item No. 273, Att. 1, ("Second Amended Complaint"), 39.)  As in the current Amended Complaint, the proposed Second Amended Complaint also asserts claims against EQT for 8/8ths of the net proceeds of these CBM wells or a ruling that the Gas Act is unconstitutional, an accounting, trespass, conversion, negligence, breach of fiduciary duties, unjust enrichment, punitive damages and attorneys' fees.

This court previously granted EQT's motion and dismissed Adair's claims for 8/8ths of the net proceeds from these wells, seeking a declaratory judgment that the

Gas Act is unconstitutional, for negligence in EQT's voluntary undertaking of identifying CBM interests and for attorneys' fees. Adair's counsel have agreed that the court's prior rulings on these issues would control and prevent the need for EQT's counsel to file its motions to dismiss these claims once again.

EQT and the amici oppose the Motion.  The Lambert Coal Owners take no position on the Motion, but request that, if the Motion is granted, the court award them their attorneys' fees to date.  As stated above, the Motion was heard before the undersigned on February 7, 2012, and is ripe for decision.

## *II. Analysis*

Once 21 days have passed since the filing of a responsive pleading, a party may amend a pleading "only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). However, "[t]he court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2).  While the decision to allow amendment is within the discretion of the court, amendment of a pleading, including the complaint, should be denied only when it would produce undue delay, would unduly prejudice the opposing party or would be futile.  *See Island Creek Coal Co. v. Lake Shore, Inc.*, 832 F.2d 274, 279 (4th Cir. 1987).

In this case, the plaintiff must have leave of the court to file his Second Amended Complaint. EQT and the amici do not argue that the proposed amendment should be denied based on undue delay or undue prejudice to any party. Instead, the opposing parties argue that the court should deny the Motion because the amendment

11

would be futile.  In particular, the opposing parties argue that the coal owners are indispensable parties and that the relief requested by Adair in the Second Amended Complaint cannot be granted as a matter of law or without the coal owners being before the court.

In the Second Amended Complaint, Adair requests entry of judgment declaring that no CBM ownership conflict exists as a matter of Virginia law as between a person owning gas estate interests in a CBM unit tract, and a different person owning coal estate interests and *not* gas estate interests in the CBM unit tract. Plaintiff's counsel argue that this issue of law was decided in the Virginia Supreme Court's decision in *Harrison-Wyatt, LLC v. Ratliff*, 593 S.E.2d 234, 235, 238 (Va. 2004), and that the court's holding in *Harrison-Wyatt* was later codified by the Virginia General Assembly in Virginia Code § 45.1-361.21:1. Opposing counsel argue that the court's rulings in *Harrison-Wyatt* decided only the specific title dispute between the parties of that case and nothing more.

This court has considered at length the *Harrison-Wyatt* decision and its impact on this and the other related CBM cases currently before it. To fully understand the extent of the Virginia Supreme Court's ruling in the case, the court also has considered the original Circuit Court decision, as well as the Circuit Court author's subsequent interpretation of that decision. *See Ratliff v. Harrison-Wyatt, LLC*, Chancery No. 187-00, slip op. (Buchanan County Circuit Court, Dec. 6, 2002); *Pobst, et al. v. Garden Realty Corp.*, No. 486-08, slip op. (Buchanan County Circuit Court, Oct. 20, 2011).

In *Ratliff*, Circuit Court Judge Keary R. Williams held "that a grant of coal rights does not include title to the CBM absent an express grant of CBM, natural gases, or minerals in general...."  Chancery No. 187-00, slip op. at 8. According to Judge Williams's opinion, the issue before the court in *Ratliff* was "whether title to the CBM [on the tracts at issue] passed to the Defendants along with the coal pursuant to the Deeds, or whether ownership remain[ed] with the surface owner Plaintiffs." Chancery No. 187-00, slip op. at 1.  The deeds at issue in *Ratliff* only referenced coal and made no mention of the grant of any other mineral or gas in any form. *See* Chancery No. 187-00, slip op. at 6.  Judge Williams, persuaded in large part by the United States Supreme Court's reasoning in *Amoco Prod. Co. v. S. Ute Tribe*, 526 U.S. 865 (1999), held that such a reference was not ambiguous, but was clear, and conveyed rights to coal only and not the CBM contained within the coal. *See Ratliff,* Chancery No. 187-00, slip op. at 6.

On appeal, the Virginia Supreme Court upheld the Circuit Court's rulings that CBM was a separate, severable mineral estate and that a grant of coal rights did not include the rights to CBM.  *See Harrison-Wyatt*, 593 S.E.2d at 236, 238. It is important to note that the Virginia Supreme Court's analysis, while sparse, did not focus on the intent of the parties to the deeds at issue.  *See* S. Ryan White, *Who Owns Coalbed Methane in West Virginia?*, 107 W. Va. L. Rev. 603, 619 (2005). Instead, the court focused on the clear meaning of the term "coal" and that CBM is not a part of coal. "CBM ... is a gas that exists freely in the coal seam and is a distinct mineral estate." *Harrison-Wyatt*, 593 S.E.2d at 238.

At least one other federal district court has cited *Harrison-Wyatt* for the

13

proposition that the Virginia court has decided that the gas estate owners for a tract of land, and not the coal estate owners, have the exclusive right to the CBM attributable to that tract. *See Michael F. Geiger, LLC v. United States*, 456 F. Supp. 2d 885, 888 (W.D. Ky. 2006). The Supreme Court of Kansas also has cited *Harrison-Wyatt* for the proposition that the Virginia court held that "the ownership of coal does not include the ownership of CBM." *See Cent. Natural Res., Inc., v. Davis Operating Co.*, 201 P.3d 680, 686 (Kan. 2009). Further, learned sources have recognized that *Harrison-Wyatt* held that coal owners do not own the CBM in Virginia. *See* 58 C.J.S. *Mines and Minerals* § 209 (2012); LoValerie Mullins, *The Equity Illusion Of Surface Ownership In Coalbed Methane Gas; The Rise Of Mutual Simultaneous Rights In Mineral Law And The Resulting Need For Dispute Resolution In Split Estate Relations*, 16 Mo. Envtl. L. & Pol'y Rev. 109 (2009).

Perhaps even more persuasive than these sources, however, is how the author of the *Ratliff* opinion, Judge Williams, has interpreted the decision. In *Pobst, et al. v. Garden Realty Corp.*, No. 486-08, slip op. at 2-3, Judge Williams, in addressing whether he could decide the issue of the ownership of CBM in that case as a matter of law, wrote:

> In *Harrison-Wyatt* ... the Supreme Court of Virginia stated, "the grant of coal rights does not include rights to CBM absent an express grant of coalbed methane, natural gas, or minerals in general." This rule was later codified by Va. Code Ann. § 45.1-361.21:1 and states, in part, "a conveyance, reservation, or exception of coal shall not be deemed to include coalbed methane gas...."
>
> ... [T]he Defendant asserts that the Court misapprehends the precedent set forth in *Harrison-Wyatt* and broadens the scope of the Supreme Court of Virginia's decision by ... deciding the ownership of the CBM as a matter of law....
>
> ... The law in Virginia is settled on the issue of CBM ownership

14

when there is a conveyance, reservation, or exception of coal. ... "[A] conveyance, reservation, or exception of coal shall not be deemed to include coalbed methane gas...."

Based on the above, I am persuaded that the Virginia Supreme Court's decision in *Harrison-Wyatt* held that, as a matter of law, a conveyance, reservation or exception of coal does not include the CBM. That being said, I find that the Motion would not be futile insofar as the Second Amended Complaint seeks a ruling that, as a matter of law, a conveyance, reservation, or exception of coal does not include CBM and, therefore, that no CBM ownership conflict exists as a matter of law as between (i) a person owning gas estate interests in a CBM unit tract, and (ii) a different person owning coal estate interests and not gas estate interests in the CBM unit tract. That, however, is not the only relief requested by the Second Amended Complaint.

The Second Amended Complaint also seeks entry of judgment declaring that:

> ... Plaintiff and the Class Members are entitled to receive the CBM proceeds that are attributable/allocated to their respective interests in those CBM Unit tracts as to which EQT has determined that Plaintiff and the Class Members are gas estate interest owners, but as to which EQT has asserted that there are conflicting claims of CBM ownership between Plaintiff and the Class Members (as gas estate interest owners) on the one hand, and persons identified by EQT as owning coal estate interests and not gas estate interests on the other hand.

(Second Amended Complaint at 15.) As stated above, the Second Amended Complaint asserts that entry of such a judgment is appropriate without naming the coal owners as parties to this case. In deciding whether this amendment would be futile, the court must examine whether the relief requested can be

15

granted and whether it can be granted in the absence of the coal owners. Based on my review of the information currently before the court, I find that it is possible that the relief requested can be granted in the absence of the coal owners, and, therefore, I find that the amendment would not be futile.

Again, the Second Amended Complaint seeks judgment that, as between the gas estate owners and the coal estate *only* owners, the gas estate owners are entitled to the CBM proceeds. Under *Harrison-Wyatt*, this is correct. The Second Amended Complaint further requests that the court enter judgment that Adair and the class members are entitled to any CBM royalties escrowed by EQT pursuant to Board orders in drilling units where EQT asserted that there were conflicting claims of ownership to the CBM between gas estate owners on the one hand and coal estate only owners on the other hand.

EQT and the amici argue that entry of such a judgment is inappropriate unless the coal owners of each of these drilling units are first made parties to this case. EQT and the amici argue that the coal owners are indispensable parties, without whom complete relief cannot be granted. EQT and the amici further argue that the conflicting claims in these drilling units are not conflicts that can be resolved as a matter of law, but will require proof of the chain of title with regard to the tracts contained in each of these drilling units.

A district court should refuse to allow an amendment based on futility only when it is not possible for the court to award the relief requested. In *Foman v. Davis*, 371 U.S. 178, 182 (1962), the United States Supreme Court explained that, in

16

considering a motion to amend a complaint, "[i]f the underlying facts or circumstances relied upon by a plaintiff *may be* a proper subject of relief, [the plaintiff] ought to be afforded an opportunity to test his claim on the merits." (Emphasis added.)  Further, an amendment is not futile unless the relief sought cannot be granted as a matter of law. *See Ward Elecs. Serv., Inc. v. First Commercial Bank*, 819 F.2d 496, 497 (4th Cir. 1987); *see also Donaldson v. U.S. Dep't of Labor*, 930 F.2d 339, 349 (4th Cir. 1991) ("amendment properly could have been found futile only if, as a matter of law, it failed to state a claim"); *Schieszler v. Ferrum College*, 236 F. Supp. 2d 602, 612 (W.D. Va. 2002) (motion for leave to file amended complaint not futile if amended complaint states a claim).

Thus, to deny the Motion as futile in this case, this court must find that Count I of the Second Amended Complaint fails to state a claim upon which relief may be granted. In determining whether a claim for relief is adequately stated, the court is not bound by the legal conclusions contained in a complaint, but the court must accept all well-pleaded factual allegations as true. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). The Second Amended Complaint alleges that Adair and the class members own the gas estate interests in the tracts of land contained in the drilling units at issue. The Second Amended Complaint further alleges that Adair and the class members were identified by EQT in filings with the Board as having claims to the ownership of the CBM in these drilling units through their ownership of the gas estate interests that conflict with CBM ownership claims of persons identified by EQT as owning the coal estate interests only.  In particular, the Second Amended Complaint alleges that EQT conducted extensive title searches to identify all of the potential owners of the CBM underlying each tract in each of its proposed drilling units. It further alleges, that

based on these title searches, EQT filed sworn applications with the Board asserting that Adair and the class members owned the gas estate interests in these tracts of land. It further alleges that EQT's sworn applications and sworn testimony before the Board asserted that the gas estate owners' claims to the CBM in these tracts was in conflict with others who EQT identified as owning the coal estate in these tracts and not the gas estate. It alleges that, if a coal estate owner also owned the gas estate, EQT listed that owner as owning both. The Second Amended Complaint alleges that, simultaneously with the filing of these applications, EQT was required to send a copy of the applications to all of the listed interest owners. The Second Amended Complaint further alleges that the Board adopted EQT's findings as to the existence of conflicting claims and who held those claims in its pooling orders.

The Gas Act and the regulations adopted by the Board pursuant to the Gas Act support Adair's allegations in Count I of the Second Amended Complaint. The Gas Act requires that an applicant seeking to establish a drilling unit must provide notice of the application to each "gas or oil owner, coal owner, or mineral owner having an interest underlying the tract." VA. CODE ANN. § 45.1-361.19 (Repl. Vol. 2002 & West Supp. 2011.) The regulations require that each application to establish a drilling unit must be accompanied by an affidavit "demonstrating that due diligence was used to locate and serve" each gas or oil owner, coal owner or mineral owner having an interest in the tracts which are the subject of the application. *See* 4 VA. ADMIN. CODE § 25-160-50(10) (2011). Furthermore, the regulations require that this notice of hearing must contain a "description of the interest or claim" of the person being notified. *See* 4 VA. ADMIN. CODE § 25-160-40(B)(7) (2011). The regulations also require that, where there are conflicting claims of ownership of the CBM, the application "shall contain a

18

description of the conflicting ownership claims." 4 VA. ADMIN. CODE § 25-160-80 (2011).

While this case is not before the court at this stage of the proceedings on an issue of fact, there are facts before the court to support Adair's allegations. The certified copies of the Board's files for the three pooling orders at issue in this case show that each application alleged, and the Board in its orders found, that EQT had "exercised due diligence in conducting a meaningful search of reasonably available sources to determine the identity and whereabouts of each gas and oil owner, coal owner, or mineral owner and/or potential owner...." Furthermore, the only documents filed with the Board by EQT to satisfy its regulatory obligations to describe the interest or claim of each of the interested parties and to describe the conflicting ownership claims were the "Exhibit B" forms attached to each of its applications and notices of hearing.  These Exhibit B forms stated that the conflict that existed in these three drilling units existed between those who owned the "Coal Estate Only" and those who owned the "Gas Estate Only." If an owner owned both the gas and coal rights, that owner was listed under both estates on these Exhibit B forms. In two of the three drilling unit at issue, Well Nos. VC-3756 and VC-504659, EQT's counsel, as agent for EQT, filed supplemental affidavits specifically stating that certain revenue interests were subject to the escrow provision "due to conflicting claims as between the gas owner and the coal owner." These affidavits stated that the revenues from these tracts were owed to either the "gas"/"gas estate" owner or the "coal"/"coal estate" owner.  The Board subsequently incorporated these facts into supplemental orders.

All along, EQT has asserted that the Board's orders, which were not appealed, are final and binding on the parties to this litigation and may not be attacked or set aside. That being the case, it appears that there is evidence before the court from which Adair may show that, in at least these three drilling units, the Board ordered escrow of the CBM revenues only because of the uncertainty in the Virginia law at the time as to whether the gas owners or the coal owners owned the CBM. Whether there is any evidence to the contrary to be developed, the court cannot determine at this stage of the proceedings. The court also cannot, however, determine that the request for relief in Count I of the Second Amended Complaint fails to state a claim for relief.

EQT and the amici also argue that the Motion is futile because it seeks to dismiss the coal owners who are required parties. A person is a "required party" under Rule 19(a) if he "claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may ... as a practical matter impair or impede the person's ability to protect that interest...." FED. R. CIV. P. 19(a)(1)(B). EQT and the amici argue that the coal owners are required parties because Adair seeks entry of judgment that they have no claim to ownership of the CBM. Based on the court's interpretation of the holding of *Harrison-Wyatt* set out above, any coal owner who possesses coal rights *only* in a tract of land does not have an interest in the CBM associated with that tract. As stated above, the Second Amended Complaint alleges that EQT asserted in its applications, and the Board adopted in its findings, that the only conflict in these drilling units was between those who owned the gas interests and those who owned the coal interest only. If that is the case, *Harrison-Wyatt* answered that question, there is no longer any conflict, and the persons listed as coal owners only on these applications have no interest in the CBM

20

or the revenues generated by the production of the CBM. The court recognizes that, whether EQT asserted, and the Board adopted, a finding that these coal owners owned coal rights *only* may be a contested question of fact. That, however, cannot be determined at this stage. For the above-stated reasons, the court cannot determine, as a matter of law, that "coal owners only" are required parties for the relief sought by the Second Amended Complaint. Therefore, the court cannot find that amending the complaint to dismiss them would be futile.

There is no merit to EQT's argument that the proposed amendment would be an improper collateral attack on the Board's pooling orders. The Second Amended Complaint simply seeks a ruling that Adair and the proposed class members are entitled to the escrowed funds from these CBM wells. The Gas Act at §  45.1-361-22(5) specifically requires such a ruling before the Board may order the release of escrowed funds.

The Lambert Coal Owners have taken no position on Adair's Motion, but have asked that if the Motion is granted that the court award them their attorneys' fees and costs expended. The court will deny this request. If the Lambert Coal Owners had wished to avoid attorneys' fees and costs in this matter, they could have simply filed an answer stating that they were not contesting Adair's claims.

## *III. Conclusion*

Based on the above-stated reasons, the Motion will be granted. An appropriate order will be entered.

ENTERED this 28th day of March, 2012.


/s/ *Pamela Meade Sargent*

UNITED STATES MAGISTRATE JUDGE