IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | | |
|---|---|---|
| ROBERT ADAIR, on behalf of himself and all others similarly situated,<br>      Plaintiff,<br><br>v.<br><br>EQT PRODUCTION COMPANY, *et al.*,<br>      Defendants. | ) ) ) ) ) ) ) ) ) ) | Case No. 1:10-cv-00037 |
| EVA MAE ADKINS, on behalf of herself and all others similarly situated,<br>      Plaintiff,<br><br>v.<br><br>EQT PRODUCTION COMPANY,<br>      Defendant. | ) ) ) ) ) ) ) ) ) ) | Case No. 1:10-cv-00041 |
| EVA MAE ADKINS, on behalf of herself and all others similarly situated,<br>      Plaintiff,<br><br>v.<br><br>EQT PRODUCTION COMPANY, *et al.*,<br>      Defendants. | ) ) ) ) ) ) ) ) ) ) ) | Case No. 1:11-cv-00031 |

**MEMORANDUM OPINION**

1

These matters are before the undersigned on the following discovery motions:

1. Motions To Compel Production Of Documents Listed On Defendant EQT Production Company's Privilege Logs, (Docket Item No. 427, *Adair* (Case No. 1:10cv00037); Docket Item No. 250, *Adkins* (*Legard*) (Case No. 1:10cv00041); Docket Item No. 214, *Adkins* (Case No. 1:11cv00031)); and

2. Motion To Compel Production Of Documents Listed On Defendant EQT Production Company's Privilege Log, (Docket Item No. 444, *Adair* (Case No. 1:10cv00037)) (collectively, "Motions").

Based on the arguments and representations of counsel, which were heard before the undersigned on July 18, 2013, and for the reasoning set out below, the Motions will be granted in part and denied in part.

*I.*

The plaintiffs in these cases sue on behalf of themselves and others similarly situated, seeking payment of royalties and other relief as lessors of coal bed methane, ("CBM"), taken from CBM wells located throughout southwestern Virginia and operated by EQT Production Company, ("EQT"). The Motions seek production of three categories of documents:

1. Documents that EQT has identified as being prepared for hearings before the Virginia Gas and Oil Board, ("Board");
2. Documents that EQT created from its own records at the request of counsel; and
3. Documents concerning the projected and actual costs, production volumes and revenues of each Class Well.

The Motions seek an order compelling the production of the documents contained in the first two categories, which were withheld from discovery by EQT under claims that they are protected from production under the work-product doctrine.  The Motions also seek an order compelling the production of the documents in the third category, which were not produced based on EQT's objection that these documents were not relevant to the claims remaining before the court.

Under the Federal Rules of Civil Procedure, any nonprivileged information that is relevant to the subject matter of an action is subject to discovery. *See* FED. R. CIV. P. 26(b)(1).  Federal Rules of Civil Procedure Rule 26(b)(3) codifies the work-product doctrine. *See* FED. R. CIV. P. 26(b)(3).

> …To determine whether evidence may be shielded from discovery by the [work-product] doctrine, the court is required to make three threshold determinations. First, the information sought must be otherwise discoverable. Second, it must have been prepared in anticipation of litigation. Third, the material must have been prepared by or for a party to the lawsuit or by of for that party's representative.

*Collins v. Mullins*, 170 F.R.D. 132, 134 (W.D. Va. 1996).  The party opposing discovery bears the burden of showing that information or materials withheld from discovery meet these three criteria and, thus, are protected by the work-product doctrine. *See Hawkins v. Stables,* 148 F.3d 379, 383 (4th Cir. 1998) (citing *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982)); *Front Royal Ins. Co. v. Gold Players, Inc.*, 187 F.R.D. 252, 254 (W.D. Va. 1999); *Collins*, 170 F.R.D. at 134.  If the information sought meets these three criteria, it is discoverable only if the party requesting the information shows that "it has substantial need for the materials to

prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." FED. R. CIV. P. 26(b)(3)(A)(ii).

With regard to the first category of documents -- documents that EQT has identified as being prepared for Board hearings, it appears that the parties do not dispute that the information sought is otherwise discoverable and was prepared by EQT or its representatives. Rather, the parties contend over whether the documents sought were prepared "in anticipation of litigation." To be protected by the work-product doctrine, a document

> …must be prepared *because* of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation. Thus, … materials prepared in the ordinary course of business or pursuant to regulatory requirements or for other non-litigation purposes are not documents prepared in anticipation of litigation within the meaning of Rule 26(b)(3).

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 984 (4th Cir 1992) (emphasis in original). "This 'because of' standard was 'designed to help district courts determine the driving force behind the preparation of the work product' and distinguish between that which is created in anticipation of litigation and that which is created in the ordinary course of business." *Botkin v. Donegal Mut. Ins. Co.,* 2011 WL 2447939, at *2 (W.D. Va. June 15, 2011) (quoting *RLI Ins. Co. v. Conseco, Inc.*, 477 F. Supp. 2d 741, 746-47 (E.D. Va. 2007)). "[T]he mere prospect of litigation is not enough." *Henson By and Through Mawyer v. Wyeth Labs., Inc.*, 118 F.R.D.584, 587 (W.D. Va. 1987). An assertion that a document is protected by the work-product doctrine must be established by specific facts and not conclusory statements. *See Adair v. EQT Prod. Co.*, 285

F.R.D. 376, 382 (W.D. Va. 2012) (citing *Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B*, 230 F.R.D. 398, 418 (D. Md. 2005)). Those facts must establish a "nexus between the preparation of the document and … specific litigation." *Burton v. R.J. Reynolds Tobacco Co., Inc.*, 175 F.R.D. 321, 328 (D. Kan. 1997).

In this case, EQT asserts that 317 emails have been withheld from production under an assertion of protection under the work-product doctrine because these documents were prepared for hearing before the Board. The privilege logs containing these documents list the date of each email, the subject, the sender and recipient and state: "Work Product – Prep for board hearings." *See* (Docket Item No. 429, Att. Nos. 1-8, *Adair* (Case No. 1:10cv00037); Docket Item No. 252, Att. Nos. 1-8, *Adkins* (*Legard*) (Case No. 1:10cv00041); Docket Item No. 216, Att. Nos. 1-8, *Adkins* (Case No. 1:11cv00031)).

Plaintiffs argue that the documents withheld from production by EQT are not protected by the work-product doctrine because they were made pursuant to regulatory requirements as part of EQT's ordinary business of obtaining pooling orders from the Board. They argue that hearings before the Board to obtain pooling orders are not adversarial, and, therefore, do not qualify as "litigation." EQT, on the other hand, argues that hearings before the Board are "litigation" because they are adversarial, in that parties at these hearing have a right to cross-examine witnesses or question the proof presented. Therefore, EQT argues the materials prepared for these hearings were created in anticipation of litigation and are protected by the work-product doctrine.

5

This court has ruled that documents, including emails, which were created in response to specific inquiries by the Department of Mines, Minerals and Energy, ("DMME"), or the Board are not protected from production by the work-product doctrine. *See Adair*, 285 F.R.D. at 382. Despite plaintiffs' arguments to the contrary, that opinion did not address whether documents created for hearings before the Board are protected by the work-product doctrine or whether the Board hearings should be considered "litigation" for purposes of the application of the work-product doctrine.

The Virginia Gas and Oil Act, VA. CODE ANN. § 45.1-361.1, et seq., (2013 Repl. Vol.) ("Act"), requires gas operators, like EQT, to appear before the Board to apply for permission to engage in numerous activities, including establishing new drilling units, pooling interests in a drilling unit, establishing escrow accounts and distributing royalty proceeds out of escrow. EQT has not provided the court with any information as to the types of hearings for which the withheld documents were prepared. The Act requires that any person who applies for hearing before the Board to create a new drilling unit, pool interests for drilling units or establish an escrow account for deposit of income attributable to conflicting interests must provide notice of the application "to each gas or oil owner, coal owner, or mineral owner having an interest underlying the tract which is the subject of the hearing. …" VA. CODE ANN. § 45.1-361.19. The Act also states:

> The Board shall conduct all hearings on applications made to it pursuant to the formal litigated issues hearing provisions of the Administrative Process Act (§ 2.2-4000 et seq.). The applicant and any person to whom notice is required to be given … shall have standing to be heard at the hearing.

VA. CODE ANN. § 45.1-361.19.  The Administrative Process Act's formal litigated issues provision states:

> In all … formal proceedings the parties shall be entitled to be accompanied by and represented by counsel, to submit oral and documentary evidence and rebuttal proofs, [and] to conduct such cross-examination as may elicit a full and fair disclosure of the facts….

VA. CODE ANN. § 2.2-4020(C) (2011 Repl. Vol.).   Thus, the procedures that govern hearings before the Board allow for cross-examination of witnesses by any person to whom notice of the hearing was required to be given.

The parties cite numerous cases in which the determination of whether a proceeding was considered "adversarial" turned on the issue of whether cross-examination was allowed. *See, e.g., Robinson v. City of Arkansas City, Kan.*, No. 10-1431, 2012 U.S. Dist. LEXIS 23806, at *43-44 (D. Kan. Feb. 24, 2012); *Fru-Con Constr. Corp. v. Sacramento Mun. Util. Dist.*, No. S-05-0583, 2006 U.S. Dist. LEXIS 53763, at *14 (E.D. Cal. July 20, 2006); *S. Union Co. v. Sw. Gas Corp.*, 205 F.R.D. 542, 549 (D. Ariz. 2002); *United States v. Am. Tel. & Tel. Co.*, 86 F.R.D. 603, 628 (D.D.C.1979).  After reviewing the cases cited, the court is of the opinion that these decisions do not, and that this court should not, find that an administrative proceeding is "adversarial" simply because cross-examination is allowed.

Perhaps it is stating the obvious, but I believe the better rule is that a proceeding, including an administrative proceeding, should be considered "adversarial" only if the proceeding has adversaries, i.e., opposing parties. Thus, a

proceeding should be considered "adversarial" only if it is a proceeding in which one party has a claim against another party. Each of the cases cited above hold that an administrative proceeding should be considered "adversarial" when an "opposing party" has a right of cross-examination or to present proof. *See Robinson,* No. 10-1431, 2012 U.S. Dist. LEXIS 23806, at *43-44 (citing *S. Union Co.*, 205 F.R.D. at 549) (citing *Am. Tel. & Tel. Co.*, 86 F.R.D. at 627)); *Fru-Con Constr. Corp.*, No. S-05-0583, 2006 U.S. Dist. LEXIS 53763, at *14 (citing *Am. Tel. & Tel. Co.*, 86 F.R.D. at 627). Under such a rule, an administrative proceeding held by a regulatory board would not be considered "adversarial" unless the proceeding involved a claim prosecuted by one party against another or a decision between multiple parties with opposing claims to the particular permit or license. *See Fru-Con Constr. Corp.*, No. S-05-0583, 2006 U.S. Dist. LEXIS 53763, at *14-15. "Where … there is only a limited appearance by outside parties and the proceedings are not adversarial but mostly *ex parte*, this … does not constitute litigation" for purposes of the application of the work-product doctrine. *Fru-Con Constr. Corp.*, No. S-05-0583, 2006 U.S. Dist. LEXIS 53763, at *15. I believe such a rule is more in line with the purpose of the work-product doctrine, which is to protect documents prepared "*because* of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation" and not documents "prepared in the ordinary course of business or pursuant to regulatory requirements." *Nat'l Union Fire Ins. Co. of Pittsburgh*, 967 F.2d at 984 (emphasis in original).

In these cases, EQT has provided no evidence that the Board proceedings for which the withheld documents were prepared were adversarial. From the court's knowledge of these proceedings and the limited information provided by EQT

regarding the documents withheld, it appears that the documents related to proceedings regarding pooling orders or escrow disbursement orders for particular drilling units – the types of proceedings required by the regulations in the ordinary course of business for a CBM well operator under the Act. Based on this, the court will find that this category of documents is not protected from production by the work-product doctrine.

With regard to the second category of documents withheld -- documents that EQT created from its own records at the request of counsel, EQT argues that these documents would not have existed but for litigation. In particular, EQT has provided evidence to the court by way of affidavit and deposition testimony that the remaining documents withheld in this category were prepared at the request of counsel for use in this or other litigation or were requests for information to respond to the requests of counsel. *See* Declaration of Rita McGlothlin-Barrett, Docket Item No. 432, Att. No. 1, *Adair* (Case No. 1:10cv00037); Docket Item No. 255, Att. No. 1, *Adkins* (*Legard*) (Case No. 1:10cv00041); Docket Item No. 219, Att. No. 1, *Adkins* (Case No. 1:11cv00031)). Based on this, the court will find that this category of documents is protected from production by the work-product doctrine.

With regard to the third category of documents withheld -- documents concerning the projected and actual costs, production volumes and revenues of each class well, EQT has objected to producing these documents because they are not relevant to any claim remaining before the court. Plaintiffs' counsel concede that the documents withheld in this category are relevant only insofar as a constitutional claim remains before the court in the *Adair* case. Based on the fact that no constitutional challenge can remain in light of the court's previous ruling

9

dismissing Adair's claim seeking a declaratory judgment that the Act was unconstitutional, the court will sustain EQT's relevance objection to producing this category of documents.

Based on the above stated reasons, the Motions will be granted in part and denied in part. An appropriate order will be entered.

ENTERED on this 27th day of September, 2013.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE