No. _____

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

ROBERT ADAIR, on behalf of himself and
all others similarly situated,

*Plaintiff-Respondent*,

v.

EQT PRODUCTION COMPANY,

*Defendant-Petitioner*.

On Appeal from the United States District Court for the
Western District of Virginia, Case No. 1:10-cv-00037

———————————

**PETITION OF EQT PRODUCTION COMPANY FOR PERMISSION
TO APPEAL ORDER GRANTING CLASS CERTIFICATION**

———————————

| | |
|---|---|
| Stephen M. Hodges | Michael W. Smith |
| Wade W. Massie | R. Braxton Hill, IV |
| Mark E. Frye | Christian & Barton |
| Penn, Stuart & Eskridge | 909 East Main Street, Suite 1200 |
| 208 East Main Street | Richmond, Virginia  23219-3095 |
| Abingdon, Virginia  24210 | Telephone:  804/697-4100 |
| Telephone:  276/628-5151 | |

Attorneys for Defendant-Petitioner EQT Production Company

Abingdon: 867038-1

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

No. _____        Caption:  Robert Adair v. EQT Production Company, et al
(WDVA 1:10cv37)

Pursuant to FRAP 26.1 and Local Rule 26.1,

EQT Production Company

Who is petitioner, makes the following disclosure:

1.      Is party/amicus a publicly held corporation or other publicly held entity?  __ YES  _x_ NO


2.      Does party/amicus have any parent corporation?                         _x_ YES  __ NO
        If yes, identify all parent corporations, including grandparent and great-grandparent
        corporation:

        EQT Corporation

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
        other publicly held entity?                                           _x_ YES  __ NO
        If yes, identify all such owners:

        EQT Corporation

4.      Is there any other publicly held corporation or other publicly held entity that has a direct
        financial interest in the outcome of the litigation (Local Rule 26.1(b))?  __ YES  _x_ NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association?  (amici curiae do not complete this question)  __ YES  _x_ NO
        If yes, identify any publicly held member whose stock or equity value could be affected
        substantially by the outcome of the proceeding or whose claims the trade association is
        pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?                   __ YES  _x_ NO
        If yes, identify any trustee and the members of any creditors' committee?



Signature: _/s/ Wade W. Massie_          Date:  October 11, 2013

Counsel for:  EQT Production Company

i

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ..............................................i

TABLE OF AUTHORITIES ........................................................iv

INTRODUCTION.................................................................... 1

STATEMENT OF FACTS ....................................................... 3

QUESTIONS PRESENTED .......................................................... 6

    1.    Whether the ownership of coalbed methane gas can be decided without making all the conflicting claimants parties? ..................................................... 6

    2.    Whether ownership of the coalbed methane gas can be decided on a classwide basis?................................................. 6

    3.    Whether the proposed class of people who win as matter of law is impermissibly fail safe? .............................. 6

    4.    Whether this case meets the other requirements for class certification?................................................................. 6

RELIEF REQUESTED............................................................ 6

REVIEW UNDER RULE 23(f) ...................................................... 7

REASONS THE APPEAL SHOULD BE GRANTED .................................. 8

    *A.*    *The Requirements of Rule 23*..................................... 8

    *B.*    *The Coal Owners Are Required Parties*...................................... 9

    *C.*    *Ownership Cannot Be Determined Without Examining the Severance Deeds*.......................................11

Abingdon: 867038-1

    D.    *Ownership Cannot Be Determined Based on the Schedules Prepared by EQT* ....................................................... 14

    E.    *The District Court Has Certified an Impermissible Fail-Safe Class* .......................................................... 15

    F.    *The Proposed Class Is Otherwise Improper* ........................... 16

CONCLUSION ...................................................................... 18

CERTIFICATE OF SERVICE

EXHIBITS

    A.    Order Certifying Class dated September 30, 2013

    B.    Report and Recommendation dated June 5, 2013

Abingdon: 867038-1

# TABLE OF AUTHORITIES

Cases:

*Comcast v. Behrend,*
133 S. Ct. 1426 (2013) ............................................................... 9

*Genenbacher v. Centurytel Fiber Co. II, LLC,*
244 F.R.D. 485 (C.D. Ill. 2007) ............................................... 16

*Gunnells v. Healthplan Servs., Inc.,*
348 F.3d 417 (4th Cir. 2003) .................................................... 8

*Hansberry v. Lee,*
311 U.S. 32 (1940) .................................................................. 10

*Harrison-Wyatt, LLC v. Ratliff,*
593 S.E.2d 234 (Va. 2004) ........................................... 2, 12, 13

*Lienhart v. Dryvit Sys.,*
255 F.3d 138 (4th Cir. 2001) .......................................... 1, 3, 7

*Lindsay Transmission, LLC v. Office Depot, Inc.,*
No. 4:12-cv-221, 2013 U.S. Dist. LEXIS 9554
(E.D. Mo. Jan. 24, 2013) ......................................................... 15

*Melton v. Carolina Power & Light Co.,*
283 F.R.D. 280 (D.S.C. 2012) ................................................ 16

*Parklane Hosiery Co. v. Shore,*
439 U.S. 322 (1979) ................................................................ 10

*Randleman v. Fid. Nat'l Title Ins. Co.,*
646 F.3d 347 (6th Cir. 2011) .................................................. 15

*Taylor v. Sturgell,*
553 U.S. 880 (2008) ................................................................ 10

Abingdon: 867038-1

*Ticor Title Ins. Co. v. Brown,*
511 U.S. 117 (1994) ................................................................... 17

*W. Union Tel. Co. v. Pa.,*
368 U.S. 71 (1961) ..................................................................... 11

*Wal-Mart Stores, Inc. v. Dukes,*
131 S. Ct. 2541 (2011) ........................................................ 8, 9, 17


Statutes:

Va. Code § 45.1-361.1 to -361.44 ............................................... 3
Va. Code § 45.1-361.21:1 ............................................................ 13
Va. Code § 45.1-361.22 ................................................................ 4
Va. Code § 45.1-361.22(5) ......................................................... 10
Va. Code § 45.1-361.22:1 ........................................................... 13
Va. Code § 45.1-361.22:1(C)-(D) .............................................. 13

Rules:

Fed. R. App. P. 5 .......................................................................... 1
Fed. R. Civ. P. 19(a)(1)(B)(ii) ................................................... 11
Fed. R. Civ. P. 23 ............................................................... 8, 9, 17
Fed. R. Civ. P. 23(a) ....................................................... 2, 8, 12, 15
Fed. R. Civ. P. 23(a)(2) ................................................................ 8
Fed. R. Civ. P. 23(b)(2) .................................... 2, 5, 8, 12, 15, 17
Fed. R. Civ. P. 23(b)(3) ............................................ 3, 5, 9, 12, 15
Fed. R. Civ. P. 23(c)(3) .............................................................. 15
Fed. R. Civ. P. 23(f) ............................................................. 1, 6, 7

EQT Production Company ("EQT") respectfully requests permission under Fed. R. App. P. 5 and Fed. R. Civ. P. 23(f) to appeal the order of the United States District Court for the Western District of Virginia entered on September 30, 2013, and attached as Exhibit A, certifying a class of persons claiming to be owners of coalbed methane gas, and who seek a recalculation and release of royalties now being held in escrow, as well as punitive damages.[1] As explained below, the claims at issue in this dispute are simply not amenable to adjudication through the class action mechanism, and this Court should grant review and reverse the order certifying a class.

I.    INTRODUCTION

This Court enjoys "unfettered discretion" whether to permit an interlocutory appeal of a class certification order and may grant an appeal on the basis of "'any consideration that the court of appeals finds persuasive.'" *Lienhart v. Dryvit Sys.*, 255 F.3d 138, 142 (4th Cir. 2001) (quoting Fed. R. Civ. P. 23(f) Advisory Committee Note). Because this case presents a fundamental question of civil procedure and due process, *i.e.* whether the district court may properly determine – through a class action –ownership of coalbed methane gas and

---

[1] In the certification order, the district court – without issuing an opinion – modified and accepted the magistrate judge's report and recommendation regarding certification, attached as Exhibit B (Docket No. 442), and summarily denied EQT's objections to the report and recommendation (Docket No. 454).

1

entitlement to associated royalties without having all of the conflicting claimants as parties to the case, interlocutory review is warranted under the law of this Circuit.

Plaintiff Robert Adair and the class members are the owners of the gas estate in tracts that are included in coalbed methane gas drilling units operated by EQT and they have been identified by EQT in filings with the Virginia Gas and Oil Board ("Board") as having claims to the ownership of coalbed methane gas through their ownership of the gas estate ("gas owners"). These claims have been further identified by EQT as being in conflict with persons owning the coal estate in the same land ("coal owners"). (Docket No. 330 ¶ 1.) Adair seeks a judicial determination that he and other class members are the owners of the coalbed methane gas *as a matter of law* by virtue of the Supreme Court of Virginia's decision in *Harrison-Wyatt, LLC v. Ratliff*, 593 S.E.2d 234 (Va. 2004), and that they are therefore entitled to the royalties in escrow. (Docket No. 330 ¶ 6.) Over EQT's objections, the district court has refused to make the other conflicting claimants, the coal owners, parties to the case.

As explained in more detail below, each coal owner is entitled to advance his or her own claim to the royalties on the coalbed methane gas at issue based on his or her specific severance deed and title documents; therefore, the district court erred in finding that the plaintiff had satisfied the commonality requirement of Fed. R. Civ. P. 23(a), the uniform declaration requirement of Rule

2

23(b)(2), and the predominance requirement of Rule 23(b)(3). This substantial weakness in the district court's certification order justifies interlocutory review under the test set forth in *Lienhart*, 255 F.3d at 142, to avoid the judicial diseconomy in allowing a flawed class certification to be litigated to final judgment only to face vacatur on appeal.

## II. STATEMENT OF FACTS

Coalbed methane gas is a natural gas residing in coal seams. (*See* Docket No. 177 at 2 of 58.) For many years, the ownership of the coalbed methane gas was not an issue because the gas was seen not as a valuable resource, but only as a hazard to coal mining. (*Id.*) In the 1970s and 1980s, however, technological advances allowed coalbed methane gas to be commercially developed, but operators were reluctant to drill because the ownership of the gas was unclear. (*Id.*)

In 1990, the Virginia General Assembly enacted the Virginia Gas and Oil Act ("Act"), Va. Code § 45.1-361 to -361.44, to promote the development of coalbed methane gas notwithstanding conflicting claims of ownership. (Docket No. 177 at 2 of 58.) The Act allows development to come first and resolution of the conflicting claims to come later. (*Id.*) The Virginia Gas and Oil Board ("Board"), a state agency, is responsible for administering the Act.

3

Under the Act, operators may apply to the Board for an order pooling the interests of all conflicting claimants to the coalbed methane gas. Va. Code § 45.1-361.22. The applicant is required to provide notice to all "potential owner[s]" of the gas. *Id.* The Board does not determine ownership. Rather, the pooling orders entered by the Board require that the proceeds attributable to the conflicting claims be paid into a state escrow account. *Id.* The escrowed money is released when the conflicting claimants reach an agreement as to ownership or when there is a judicial or administrative determination of ownership between the conflicting claimants. *Id.*

Plaintiff Robert Adair owns the gas estate (but not the coal estate) on a tract of land in Dickenson County, Virginia, portions of which have been forced pooled pursuant to the Act. (Docket No. 330 ¶¶ 1-4.) Because Adair did not elect to participate in the wells as the Act allows him to do, he was deemed to have leased his interests to the unit operator, EQT. (*Id.*)

Adair seeks to represent a class of deemed lessors who have been identified by EQT in forced pooling applications to the Board as being owners of the gas estate whose claims are in conflict with persons identified by EQT as owners of the coal estate. When Adair initially filed this action, he agreed that the coal owners are required parties because the class is asking the court to "divest them of any right, title and interest" in the gas and "to say they don't own it."

4

(Docket No. 175 at 25 of 81.)  A year and a half later, however, Adair reversed positions and argued that it was not necessary to make the coal owners parties because ownership should be decided in his favor "as a matter of law."  (Docket No. 274 at 7-11 of 17.)

EQT opposed Adair's motion to amend to drop the coal owners as parties, citing the need to bind all claimants to the ownership decision.  (Docket No. 284.)  The magistrate judge granted Adair's motion, however, and the district court denied EQT's objections to the magistrate judge's order.  (Docket Nos. 328, 329, 403.)

The magistrate judge also recommended that a class be certified under Rule 23(b)(2) and Rule 23(b)(3).  EQT filed numerous objections to this recommendation, including

- The need to make the coal owners parties;
- The need to make individual determinations of ownership based on the applicable severance deeds and title information;
- The fail-safe nature of the class definition – as all class members win as matter of law under plaintiff's theory.

(Docket No. 454.)

While the district judge heard argument on EQT's objections to the magistrate judge's recommendations, the district judge issued no opinion on class

5

certification. Instead, the district judge simply adopted the magistrate judge's recommendation, even though that recommendation does not address some of the principal arguments made by EQT. (Exhibit A.)

As a result, EQT is now facing years of litigation with a class that should have never been certified. In the interest of justice and judicial economy, EQT asks the Court to grant permission for this appeal, and upon consideration of the issue, to reverse the order certifying a class.

## III. QUESTIONS PRESENTED

1. Whether the ownership of coalbed methane gas can be decided without making all the conflicting claimants parties?

2. Whether ownership of the coalbed methane gas can be decided on a classwide basis?

3. Whether the proposed class of people who win as matter of law is impermissibly fail safe?

4. Whether this case meets the other requirements for class certification?

## IV. RELIEF REQUESTED

EQT seeks leave, pursuant to Rule 23(f), to appeal the order certifying a class, which was entered on September 30, 2013. This petition was timely filed within 14 days of entry of that order.

6

## V.   REVIEW UNDER RULE 23(f)

The Court has broad discretion whether to permit an appeal under

Rule 23(f).  *Lienhart*, 255 F.3d at 142.  The Court has adopted the following test to

guide the exercise of its discretion:

> (1) whether the certification ruling is likely dispositive of
> the litigation; (2) whether the district court's certification
> decision contains a substantial weakness; (3) whether the
> appeal will permit the resolution of an unsettled legal
> question of general importance; (4) the nature and status
> of the litigation before the district court (such as the
> presence of outstanding dispositive motions and the
> status of discovery); and (5) the likelihood that future
> events will make appellate review more or less
> appropriate.

*Id*. at 144-45.  In applying the third factor – whether the appeal will permit the

resolution of an unsettled legal question of general importance – the Court

considers "the impact of the questions at issue to related actions involving the same

or similarly-situated parties."  *Id*.  Moreover, the "substantial weakness" prong

operates on a sliding scale to determine the strength of the necessary showing

regarding the other factors.  *Id*. at 145-46.  Where a district court's certification

decision is manifestly erroneous and virtually certain to be reversed on appeal for

an abuse of discretion, the issues involved need not be of general importance, nor

must the certification decision constitute a "death knell" for the litigation.  *Id*. at

145.

7

## VI.  REASONS THE APPEAL SHOULD BE GRANTED

### A.    *The Requirements of Rule 23*

Under Federal Rule of Civil Procedure 23, a proposed class must meet all of the requirements of Rule 23(a) and fall within one of the three categories in Rule 23(b).  *Gunnells v. Healthplan Servs., Inc.,* 348 F.3d 417, 423 (4th Cir. 2003). Rule 23(a)(2) requires commonality, which is described as involving "questions of law or fact common to the class."  Rule 23(a)(2) "is easy to misread" because any competently crafted class complaint will raise common questions.  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  "What matters to class certification . . . is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation."  *Id.* (internal quotations omitted).

Rule 23(b)(2) allows class treatment when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted – the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them."  *Wal-Mart*, 131 S. Ct. at 2557 (internal quotations omitted).

Rule 23(b)(3) requires proof that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

As the party seeking class certification, the plaintiff must "affirmatively demonstrate" compliance with Rule 23. *Wal-Mart*, 131 S. Ct. at 2551. Certification is proper only if the district court is satisfied, after a "rigorous analysis," that the prerequisites of Rule 23 have been satisfied. *Id*. This analysis may properly involve some overlap with the merits of plaintiffs' claims. *Comcast v. Behrend*, 133 S. Ct. 1426, 1432 (2013).

As discussed below, the order should be reversed because there is no common or uniform answer to the central question in the litigation, namely, the ownership of the coalbed methane gas. The order should also be reversed because the absence of the coal owners as parties violates Virginia law and the United States Constitution and the class certified is an impermissible fail-safe class.

## B.  *The Coal Owners Are Required Parties*

Adair has sued EQT, which claims no ownership interest in the gas or the escrowed royalties, but he has not sued the coal owners whose rights he seeks to extinguish. While the district judge previously recognized that "no all-encompassing judicial determination of ownership could be made without the

9

presence in the lawsuit of any competing owners" (Docket No. 403 at 5 of 7), that is precisely what the order allows – a complete and final determination of ownership and release of all funds from escrow without the competing claimants as parties. The certification of a class action without the coal owners as parties is contrary to both Virginia law and the United States Constitution.

Under the Virginia statute, ownership must be determined in a judicial proceeding between the conflicting claimants. Va. Code § 45.1-361.22(5). This is not a judicial proceeding between the conflicting claimants. It is a proceeding between one group of claimants against the well operator, which is not a claimant to the funds.

Deciding ownership without the competing owners as parties deprives them and EQT of due process. It is axiomatic that one is not bound by a judgment in litigation in which he is not designated as a party or made a party by service of process. *See, e.g., Taylor v. Sturgell*, 553 U.S. 880, 884 (2008); *Hansberry v. Lee*, 311 U.S. 32, 40 (1940). Under the "deep-rooted historic tradition that everyone should have his own day in court," *Taylor*, 553 U.S. at 892-93 (internal quotations omitted), it would be "a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard," *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n.7 (1979).

Abingdon: 867038-1

Consequently, the coal owners will not be bound by any judgment in this case unless they are parties.[2]

Because the competing owners will not be bound, EQT will be exposed to the risk of multiple liability and deprived of due process. An order that does not bind all of the conflicting claimants will subject EQT to the very type of liability that the escrow provisions of the Act are designed to avoid. As the Supreme Court explained decades ago, the holder of property "is deprived of due process of law if he is compelled to relinquish it without assurance that he will not be held liable again . . . in a suit brought by a claimant who is not bound by the first judgment." *W. Union Tel. Co. v. Pa.*, 368 U.S. 71, 75 (1961); Fed. R. Civ. P. 19(a)(1)(B)(ii) (requiring joinder of claimants whose absence may "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations").

> C.   *Ownership Cannot Be Determined Without Examining the Severance Deeds*

A class action is not a proper means to decide the ownership of mineral rights between conflicting claimants. Ownership is an inherently individualized determination. One must identify the applicable severance deed or deeds that created different estates in the property. The severance deed may be a

---

[2] By contrast, dozens of individual cases now pending in state court all include both the gas owners and the coal owners as parties.

reservation or conveyance. There may be multiple severances, as where the surface is severed from the minerals and the minerals are further severed into various estates. This case involves approximately 260 coalbed methane gas units, which, on average, have four to six titles each. Consequently, there are more than 1,000 mineral titles at issue. The individual determination of these mineral rights cannot possibly meet the commonality requirement of Rule 23(a), the uniform declaration requirement of Rule 23(b)(2), or the predominance requirement of Rule 23(b)(3).

Although EQT has produced all of its title files, plaintiff has not attempted to review ownership issues under any of the severance deeds – much less to show that the issues are subject to classwide resolution. The reason is that plaintiff cannot. The provisions of the deeds are too varied. Adair has not even analyzed his own deed or shown that it is similar to those involved in *Harrison-Wyatt*.

The Virginia General Assembly, the Board, other courts, and conflicting claimants all recognize that ownership of coalbed methane gas must be determined based on each severance deed and chain of title. Shortly after *Harrison-Wyatt* was decided, the Department of Mines, Minerals, and Energy issued a press release describing the case as applying to "three particular tracts of land in Buchanan County." (Docket No. 215-1 at 5 of 7.) The agency noted that

12

"neither the Virginia courts nor the legislature has addressed this ownership issue other than on the basis of analysis of individual deeds." (*Id.* at 6 of 7.) Consistent with this view, conflicting claimants recognize that *Harrison-Wyatt* does not resolve all ownership and development questions, and they continue to execute "split agreements" to divide the royalties by agreement. Similarly, courts continue to determine the ownership of coalbed methane gas by examining the severance deeds and chains of title.

In 2010, the General Assembly enacted Va. Code § 45.1-361.21:1 stating that "[a] conveyance, reservation, or exception of coal shall not be deemed to include coalbed methane gas." Because severance deeds often include more than just coal, conflicting claims continue, and the General Assembly left intact the escrow requirement for these claims.

Also in 2010, the General Assembly enacted Va. Code § 45.1-361.22:1 to provide for arbitration of ownership disputes. The arbitrator is required to have "at least 10 years of experience in real estate law, including substantial expertise in mineral title examination." Va. Code § 45.1-361.22:1(C)-(D). The statute provides for a hearing where both sides can present witnesses and exhibits in support of their claims. *Id.* The General Assembly would not have required that the arbitrator have substantial expertise in mineral title examinations

13

if mineral titles are irrelevant. Neither would the General Assembly have provided for an evidentiary hearing if no evidence can change the outcome.

> D. *Ownership Cannot Be Determined Based on the Schedules Prepared by EQT*

Adair recognizes that a class action is not possible if ownership must be determined "deed by deed." (Docket No. 297 at 4 of 16.) Consequently, plaintiff has devised the theory that ownership can be decided based solely on the schedules prepared by EQT and filed with its pooling applications to the Board. Under this theory, every person listed under the label "gas estate only" wins as a matter of law and every person listed by EQT under the label "coal estate only" loses as a matter of law. But ownership cannot be decided based on the schedules. The Act required EQT to identify all potential owners. The schedules do that, nothing more. The evidence is undisputed that the labels "gas estate only" and "coal estate only" are just that, labels. The labels are only meant to list the conflicting claimants and do not describe the rights held by the claimants, nor are they dispositive of the ownership interests held by the individuals. (Docket No. 404-1 at 133-34 and 138-40 of 153.) Were it otherwise, the Act would not have directed the payment of the funds into escrow in the first place.

Neither the magistrate judge nor the district judge ever explained how persons labeled in the schedules as "coal estate only" are bound by that label or why they have no right to defend their ownership based upon their own title

14

documents. Because ownership cannot properly be determined by schedules, the commonality requirement of Rule 23(a), the uniform declaration requirement of Rule 23(b)(2), and the predominance requirement of Rule 23(b)(3) are not satisfied.

> ### E. The District Court Has Certified an Impermissible Fail-Safe Class

In the report and recommendation approved by the district judge, the magistrate judge found that there was no need to make the coal owner parties or to look at individual severance deeds because the class was defined as "persons identified by the operators as the owners of the gas estate whose royalties have been withheld because the operators allege there are conflicting claims to ownership of the CBM from persons identified as owning the coal estate but not the gas estate." (Exhibit B at 70-71.) In other words, the class consists of people who own gas and the conflicting claimants are people who do not own gas. This is a classic fail-safe class.

A fail-safe class is not permitted because Rule 23(c)(3) requires that there be a possibility of an adverse judgment against the class. *Randleman v. Fid. Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011) (describing a class as fail safe when "the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment"); *Lindsay Transmission, LLC v. Office Depot, Inc.*, No. 4:12-cv-221, 2013 U.S. Dist. LEXIS 9554, at *10 (E.D. Mo. Jan.

24, 2013) ("A fail-safe class is one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim") (internal quotations omitted); *Melton v. Carolina Power & Light Co.*, 283 F.R.D. 280, 288 (D.S.C. 2012) ("[A fail safe class] requires a court to rule on the merits of the claim at the class certification stage in order to tell who was included in the class."); *Genenbacher v. Centurytel Fiber Co. II, LLC*, 244 F.R.D. 485, 488 (C.D. Ill. 2007) ("The proposed class definition…is improper because the Court cannot enter an adverse judgment against the class.").

Although EQT has repeatedly raised the fail-safe class argument in briefing and oral argument in this case, neither the magistrate judge nor the district judge has ever addressed it.

### F. The Proposed Class Is Otherwise Improper

In addition to a declaration of ownership of the coalbed methane gas at issue, plaintiff seeks for himself and the class a recalculation and payment of escrowed royalties, on the theory (i) that even though all of the pooling orders entered by the Board allow EQT to deduct post-production costs, "including, but not limited to, gathering, compression, treating, transportation and marketing costs" (Docket No. 399-18 at 8), the deductions taken are allegedly excessive, (ii) that EQT supposedly did not pay on the required volumes, and (iii) that EQT did not obtain market price for the gas.

16

As a threshold matter, certification of these claims is not proper under Rule 23(b)(2), as they include monetary relief. (Docket No. 330 ¶ 116(c)-(d).) Fed. R. Civ. P. 23(b)(2) only authorizes claims for "final injunctive relief or corresponding declaratory relief," and the United States Supreme Court has noted that there is "a substantial possibility" that monetary claims can never be certified under Rule 23(b)(2). *Ticor Title Ins. Co. v. Brown*, 511 U.S. 117, 121 (1994); *see also Wal-Mart*, 131 S. Ct. at 2557, 2560.

Moreover, Adair has presented no evidence to support his royalty calculation claims, and he has presented no evidence that the allegations can be decided on a classwide basis. For example, there is no evidence of what deductions were taken on the payments that EQT made into escrow for the wells on Adair's property. There is no evidence of the price that EQT obtained for Adair's gas or the market value of the gas. There is no evidence of the volumes on which EQT paid or the volumes on which plaintiff contends should have been paid. Likewise, there is no evidence that any alleged underpayments on production from the wells on Adair's property are the same as the alleged underpayments on wells of other class members. As *Wal-Mart* explains, Rule 23 is more than a pleading standard. A party seeking certification must affirmatively prove that the requirements of Rule 23 are met. 131 S. Ct. at 2551. Adair's failure of proof is fatal and requires reversal of the certification order.

17

Abingdon: 867038-1

## VII.   CONCLUSION

For the foregoing reasons, EQT respectfully requests that the Court

grant its petition and allow an interlocutory appeal of the order certifying a class.

EQT PRODUCTION COMPANY

By Counsel

Stephen M. Hodges
Wade W. Massie
Mark E. Frye
Penn, Stuart & Eskridge
P. O. Box 2288
Abingdon, VA  24212
Telephone:  276-628-5151
Facsimile:  276-628-5621
shodges@pennstuart.com
wmassie@pennstuart.com
mfrye@pennstuart.com

By  /s/ Wade W. Massie
        Wade W. Massie

Michael W. Smith
R. Braxton Hill, IV
Christian & Barton
909 East Main Street, Suite 1200
Richmond, Virginia  23219-3095
Telephone:  804/697-4100
msmith@cblaw.com
bhill@cblaw.com

By  /s/ Michael W. Smith
        Michael W. Smith

18

CERTIFICATE OF SERVICE

I certify that on October 11, 2013, the foregoing was filed with the

Clerk of Court using the CM/ECF system and copies were served via email and first

class mail on the following counsel of record for plaintiff:

> Elizabeth A. Alexander, Esq.
> Lieff, Cabraser, Heimann & Bernstein, LLP
> One Nashville Place
> 150 Fourth Avenue, North, Suite 1650
> Nashville, TN  37219
> ealexander@lchb.com
>
> Charles Barrett, Esq.
> 6518 Highway 100, Suite 210
> Nashville, TN  37205
> charles@cfbfirm.com
>
> Don W. Barrett, Esq.
> Barrett Law Offices
> P.O. Box 927
> Lexington, MS  39095
> dbarrett@barrettlawgroup.com
>
> Richard R. Barrett, Esq.
> Law Offices of Richard R. Barrett, PLLC
> P.O. Box 339
> Lexington, MS  39095
> rrb@rrblawfirm.net
>
> Peter G. Glubiak, Esq.
> Glubiak Law Office
> P.O. Box 144
> Aylett, VA  23009
> glubiaklaw@aol.com

Brian Herrington, Esq.
Barrett Law Group, P.A.
P.O. Box 927
Lexington, MS 39095
bherrington@barrettlawgroup.com

David M. McMullan, Jr., Esq.
Don Barrett, P.A.
P.O. Drawer 927
Lexington, MS 39095
dmcmullan@barrettlawgroup.com

Larry D. Moffett, Esq.
Daniel Coker Horton & Bell PA
265 North Lamar Boulevard, Suite R
P.O. Box 1396
Oxford, MS 38655
lmoffett@danielcoker.com

Daniel E. Seltz, Esq.
Lieff, Cabraser, Heimann & Bernstein, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
dseltz@lchb.com

Jennifer L. Shaver, Esq.
P.O. Box 2032
Abingdon, VA 24212
jen@jenshaver.com

David S. Stellings, Esq.
Lieff, Cabraser, Heimann & Bernstein, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
dstellings@lchb.com

_/s/ Wade W. Massie_
Wade W. Massie

Abingdon: 867038-1